The SIERRA CLUB, Utah Chapter, Petitioner,

v.

DEPARTMENT OF ENVIRONMENTAL QUALITY, DIVISION OF SOLID AND HAZARDOUS WASTE, Respondent,

and

USPCI, Inc., Intervenor.

No. 920485–CA.

Court of Appeals of Utah.

Aug. 5, 1993.

---

Daniel W. Jackson, Salt Lake City, for petitioner.

Jan Graham, Laura Lockhart, and Raymond Wixom, Salt Lake City, for respondent.

Lawrence E. Stevens, David W. Tundermann, and Kenneth R. Barrett, Salt Lake City, for intervenor.

Before BENCH, GARFF and JACKSON, JJ.

JACKSON, Judge:

Petitioner, Sierra Club, seeks review of the Utah Solid and Hazardous Waste Control Board's decision that USPCI, Inc. complied with the hazardous waste facility siting criteria pursuant to Utah Admin.Code R315–3–23(c)(1) (1992) and that the permit application was "complete" pursuant to Utah Code Ann. § 19–6–108(5)(b) (1992). We dismiss the petition on the ground that Sierra Club lacks standing to raise these issues for review.

## FACTS

On February 14, 1989, USPCI, Inc. (USPCI) submitted to the Division of Solid and Hazardous Waste, an operation plan application[1] for the Clive Incinerator Facility

---

**1.** The Utah Solid and Hazardous Waste Act requires a person who proposes to construct and operate a hazardous waste treatment, storage or disposal facility to submit an operation plan for approval by the Executive Secretary of the Utah Solid and Hazardous Waste Control Board.

984

(CIF), a commercial hazardous waste incinerator to be located at Clive, Utah.[2] The Executive Secretary of the Solid and Hazardous Waste Board (the Board) reviewed the application and issued two notices of deficiency, requesting that USPCI provide additional information to the Board. USPCI submitted the additional information and on August 14, 1990, the Executive Secretary found the amended plan application to be "complete"[3] and issued a notice of completeness to USPCI. On November 19, 1990, the Executive Secretary issued a draft plan approval for the CIF.

After a period of public comment and meetings, the Executive Secretary issued the final approval of the operation plan on November 1, 1991. On December 2, 1991, Sierra Club filed a "Notice of Appeal" of the Executive Secretary's plan approval. On January 21, 1992, the Executive Secretary, Sierra Club, and USPCI, stipulated that Sierra Club could enter the action pursuant to Utah Code Ann. § 63–46b–9 (1992). Sierra Club stated that its legal interests were substantially affected by the operation of the CIF. Sierra Club based these assertions upon affidavits by members of Sierra Club setting forth facts stating the manner in which the construction and operation of the CIF would adversely affect the members' enjoyment and use of public lands in the west desert area of Utah, including Tooele County.[4] The Board approved the stipulation and scheduled an administrative review. On the first day of the administrative hearing, Sierra Club, for the first time, raised the issue

that the application was not "complete" because it failed to contain evidence that emergency response plans had been coordinated with local and regional emergency response personnel.[5]

The Board subsequently issued a written opinion affirming the decision to approve the CIF operation plan. In its opinion, the Board found that the operation plan application contained evidence of coordination with local and regional emergency response personnel, as required by Utah Admin. R315–3–23(c)(1), and that the application was "complete" as of August 14, 1990.

## ISSUES

Sierra Club challenges the Board's finding that the application contained evidence that emergency response plans had been coordinated with local and regional emergency response personnel. Sierra Club also alleges that because insufficient evidence existed to support a finding of such coordination, the Board improperly concluded that the CIF operation plan was "complete" on August 14, 1990.

■ Whatever the merits of Sierra Club's claims, we will not address them if Sierra Club lacks standing to raise them. Standing is an issue that can be raised *sua sponte* at any time. *See State v. Tuttle*, 780 P.2d 1203, 1207 (Utah 1989), *cert. denied*, 494 U.S. 1018, 110 S.Ct. 1323, 108 L.Ed.2d 498 (1990); *Utah Restaurant Ass'n v. Davis County Bd. of Health*, 709

Utah Code Ann. § 19–6–108(3)(a) (Supp.1992). Under authority granted to the Board by the Solid and Hazardous Waste Act, the Board has promulgated rules governing the procedures of reviewing and approving plan applications and the substantive content of the plan applications. *See* Utah Admin.Code R315–3–1 to –23 and R315–8–1 to –24 (1992).

**2.** Clive, Utah is located in Tooele County, approximately 80 miles west of Salt Lake City, Utah.

**3.** Utah Code Ann. § 19–6–108(5)(b) (Supp.1992) requires that the Executive Secretary "shall determine whether the plan is complete and contains all the information necessary to process the plan for approval."

**4.** The identical affidavits were originally submitted in connection with an administrative appeal of rights-of-way issued to USPCI by the federal Bureau of Land Management.

**5.** The Utah Administrative Code provides that hazardous waste facility siting criteria must be met in order for the Executive Secretary to deem an application complete. Utah Admin.Code R315–3–23 (1992). Subsection (c)(1) requires that the application "contain evidence that emergency response plans have been coordinated with local and regional emergency response personnel." Utah Admin.Code R315–3–23(c)(1). The Sierra Club also made several other challenges to the plan approval, none of which were raised in this petition for review.

P.2d 1159, 1160 (Utah 1985). Accordingly, we requested that the parties submit supplemental briefs addressing whether Sierra Club has standing to pursue this petition for review.

## ANALYSIS

We believe Sierra Club does not have standing to challenge the emergency coordination siting criteria determination or the completeness determination because (1) even if the parties can stipulate to standing, Sierra Club's challenge goes beyond the issues upon which the stipulation was based; and (2) Sierra Club and its members were not injured by the Board's determination, were not the most appropriate plaintiffs to bring the action, and did not raise issues of such public importance that they ought to be decided in furtherance of the public interest.

### A. STIPULATION

■ In order to secure standing in the action before the Board, Sierra Club entered into a stipulation with USPCI and the Executive Secretary. It is questionable whether the stipulation in and of itself could confer standing upon Sierra Club or its members if they did not meet the requirements outlined in Utah Code Ann. § 63–46b–9 (1989). *See United States v. Blanco*, 844 F.2d 344, 349 n. 4 (6th Cir. 1988) (it is doubtful whether a party may stipulate as to standing; questions of law are generally not subject to stipulation), *cert. denied*, 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988); *United States v. Miller*, 822 F.2d 828, 831–32 (9th Cir.1987). However, assuming arguendo that the parties can stipulate to standing, the issues

raised on appeal were not part of the stipulation.

The stipulation specified that Sierra Club would be able to enter the action pursuant to Utah Code Ann. § 63–46b–9. Section 63–46b–9(1)(c) required Sierra Club to provide a statement of facts demonstrating that its rights or interests were "substantially affected by the formal adjudicative proceeding." To meet this requirement, Sierra Club submitted a Statement of Standing[6] asserting that its legal interests would be substantially affected by the operation of CIF because of the "air emissions, fugitive dust, possible ground water contamination, and long-term effects on the environment which would affect [surrounding lands.]" To support these assertions and secure standing before the Board, Sierra Club submitted affidavits of its members from an earlier Bureau of Land Management proceeding stating that the construction and operation of the CIF would adversely affect the members' enjoyment and use of public lands in Western Utah.

When Sierra Club submitted the above documents and when the stipulation was entered into, Sierra Club did not claim any injury to itself or its members because of the "completeness" determination or any alleged failure to comply with emergency coordination siting criteria.[7] These claims were not made by Sierra Club until after the stipulation was entered into. Thus, Sierra Club may not base standing to challenge the siting criteria or the completeness determination on the stipulation. Once Sierra Club and its members raised issues outside the scope of the stipulation, they lost any claim of standing arising out of the stipulation itself.

**6.** The Statement of Standing submitted by the *Sierra Club* was actually a *document* originally submitted to the Department of the Interior in connection with an appeal of rights-of-way issued to USPCI by the federal Bureau of Land Management. Sierra Club claims that the grant of the land exchange would cause the adverse effects of which Sierra Club members complain.

**7.** None of the affidavits make any reference to injury incurred because of USPCI's failure to comply with R315–3–23(c)(1). One affidavit was submitted by Cynthia A. King in connection with the granting of land rights-of-way by the federal Bureau of Land Management. Ms. King mentions that USPCI had obtained oral rather than written agreements for emergency response with Salt Lake City, West Valley City, and the Salt Lake County Local Emergency Planning Committee. However, these agreements have no connection with the emergency coordination siting criteria located in the Utah Admin.Code R315–3–23(c)(1) (1992), which is the essence of this appeal.

## B. STANDING

■ Because the stipulation did not cover the issues raised in this petition for review, Sierra Club has standing to pursue this petition for review [8] only if Sierra Club can establish that it was injured by the Board's determination, that it ·is the most appropriate plaintiff to bring the action, or that it raises issues of such public importance that they ought to be decided in furtherance of the public interest. *National Parks and Conservation Ass'n v. Bd. of State Lands*, 215 Utah Adv.Rep. 21, 22–23, —— P.2d —— (Utah 1993).

### 1. DISTINCT INJURY

■ The first and most widely used standard to show standing requires a plaintiff to show some distinct and palpable injury that gives rise to a personal stake in the outcome of the dispute. *National Parks*, 215 Utah Adv.Rep. at 22, —— P.2d at ——; *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983). "One who is adversely affected by governmental actions has standing under this criterion. One who is not adversely affected has no standing." *Id.* at 1150. A mere allegation of adverse impact is not sufficient; there must also be some causal relationship alleged between the injury to the plaintiff and the governmental actions. *Id.* Sierra Club claims its interests were adversely affected by (a) the Board's conclusion that USPCI fully complied with the hazardous waste facility siting criteria and (b) the determination that the application was "complete."

### a. COMPLIANCE WITH SITING CRITERIA

Under the standing test stated above, we can consider the claim of adverse impact, then the alleged causal relationship between the governmental action and the adverse impact to determine whether Sierra Club was injured, thereby giving Sierra Club standing to challenge the emergency coordination siting criteria determination

before the Board. *See Society of Professional Journalists*, 743 P.2d 1166, 1173 (Utah 1987).

The Sierra Club members claim that their use and enjoyment of the area surrounding the CIF will be adversely affected if USPCI is allowed to operate the CIF in the area. Specifically, the members assert that the CIF will generate pollution, thereby impairing the members' enjoyment of the area. The government action at issue is the Board's determination that USPCI had coordinated emergency response with proper emergency personnel. We fail to see any causal connection between the Board's determination and Sierra Club members' allegations that their use and enjoyment of Western Utah will be adversely affected. Sierra Club must show a particularized injury by virtue of the claimed wrong. *See Jenkins*, 675 P.2d at 1151. Sierra Club members never asserted any injury because of lack of emergency coordination. The affidavits only assert injury to the members' use and enjoyment of areas in Western Utah. Thus, Sierra Club's attack on the Board's determination is nothing but a "generalized attack on the Board's mode of proceeding, an attack that could have been made equally well by anyone." *See Society*, 743 P.2d at 1172 n. 7. Because Sierra Club and its members failed to show or allege any specific injury causally related to the alleged illegal activity, Sierra Club has not shown that it was adversely affected by the Board's decision.

### b. COMPLETENESS DETERMINATION

In deciding whether Sierra Club has been injured by the Board's "completeness" determination we again must first consider the alleged causal relationship between the governmental action and the adverse impact. *Society*, 743 P.2d at 1173. The claim of adverse impact made before the Board was that Sierra Club members' use and enjoyment of the area surrounding the CIF

---

**8.** Sierra Club has standing only if its individual members have standing. *Utah Restaurant Ass'n v. Davis County Bd. of Health*, 709 P.2d 1159, 1163 (Utah 1985). When the opinion refers to

"Sierra Club," the term also includes the Sierra Club members who submitted affidavits concerning their use and enjoyment of Western Utah.

will be adversely affected if USPCI is allowed to operate the CIF in the area because of the pollution generated thereby. The government action at issue is the Board's determination that USPCI's application was "complete." As with the siting criteria, we again fail to see any causal connection between the "completeness" determination and Sierra Club members' allegations that their use of the area in Western Utah will be adversely affected.

Apparently, Sierra Club members believe that the completeness determination was key to USPCI's ability to construct and operate the CIF, thereby providing the required causal connection. However, it is not enough for Sierra Club to speculate that its members' interests might at some time in the future be adversely affected by the completeness determination. Sierra Club must also show that those interests are "legally protectable." *See Jenkins*, 675 P.2d at 1148 (the traditional standing test requires that a party seeking relief "have a legally protectable interest in the controversy").

A determination by the Board that an application is "complete" under Utah Code Ann. § 19–6–108(5)(b) and Utah Admin.Code R315–3–3(i) is an internal procedural decision preceding any public involvement in the permit process. Only the applicant receives notice of the completeness determination. The "completeness" label merely shows that the applicant has addressed any notices of deficiency and the Executive Secretary can now prepare a draft plan approval for public review and comment. The determination of completeness is not intended to protect any interests of Sierra Club or any interests of the general public. Sierra Club members' claims that their use and enjoyment of Western Utah will be adversely affected have no connection with the determination by the Board that the application was complete. Accordingly, we find Sierra Club has failed to show or allege any causal connection between the "completeness" determination and Sierra Club members' allegations of injury.

## 2. MOST APPROPRIATE PLAINTIFF

■ Even if a plaintiff cannot show that it suffered some distinct injury, standing may still be established if no other plaintiff has a greater interest in the outcome and if the issue is unlikely to be raised at all if the plaintiff is denied standing. *Jenkins*, 675 P.2d at 1150. Sierra Club is not the most appropriate plaintiff to challenge the Board's decision. Other more appropriate plaintiffs with a greater interest in this dispute might include emergency response personnel, other persons working in the area of the proposed CIF, owners of property near the site, or public or private entities located in proximity to the site.

## 3. ISSUES OF PUBLIC IMPORTANCE

■ Sierra Club would nonetheless have standing if the issues presented are "unique and of such great public importance that they ought to be decided in furtherance of the public interest." *See National Parks*, 215 Utah Adv.Rep. at 23, —— P.2d at ——; *Terracor v. Utah Bd. of State Lands & Forestry*, 716 P.2d 796, 799 (Utah 1986). We believe Sierra Club has not raised issues of significant public importance. Sierra Club is challenging determinations by the Board that constitute internal procedural decisions preceding any public involvement in the permit process. The issues, at this stage, are not of great public importance and it is not in the public interest to seek review of the Board's internal operating procedures.

## CONCLUSION

Sierra Club does not have standing to challenge the emergency coordination siting criteria determination or the completeness determination because, even assuming the parties can stipulate to standing, the challenge goes beyond the issues upon which the stipulation was based. Further, Sierra Club and its members were not injured by the Board's determination, were

not the most appropriate plaintiffs to bring the action, and did not raise issues of such public importance that they ought to be decided in furtherance of the public interest. Accordingly, we dismiss Sierra Club's petition.

BENCH and GARFF, JJ., concur.