**2003 UT 5**

**IHC HEALTH SERVICES, INC., a Utah non-profit corporation, Plaintiff and Appellee,**

**v.**

**D & K MANAGEMENT, INC., a Utah corporation, Defendant and Appellant.**

**No. 20010508.**

Supreme Court of Utah.

March 11, 2003.

Rehearing Denied July 1, 2003.

Guy P. Kroesche, D. Matthew Moscon, Matthew M. Durham, Salt Lake City, for plaintiff.

Michael N. Zundel, Glenn R. Bronson, Salt Lake City, for defendant.

WILKINS, Justice:

¶1 D & K Management, Inc. ("D & K") appeals from an order granting summary judgment to IHC Health Services, Inc. ("IHC") and denying D & K's cross motion for summary judgment.[1] IHC seeks forfeiture of D & K's leasehold interest in proper-

---

1. IHC originally filed a motion for judgment on the pleadings, pursuant to rule 12(c) of the Utah Rules of Civil Procedure. Various affidavits and depositions appear in the record and the trial court appears to have correctly converted the motion into one for summary judgment. Utah R. Civ. P. 12(c).

ty owned by IHC based on D & K's alleged default under the lease. D & K argues that the trial court erred in granting IHC's summary judgment motion because IHC waived its right to enforce any prior breach by forfeiture. D & K also argues that the trial court failed to properly consider its argument that IHC should be estopped from enforcing the forfeiture provision. We reverse and remand with regard to D & K's waiver argument, but hold that D & K's estoppel argument fails.

## BACKGROUND

¶ 2 D & K operates an ongoing business on property owned by IHC in Murray City. D & K's lease of the subject property commenced in 1994 with IHC's predecessor-in-interest, Medical Plaza 9400 ("Medical Plaza"), as the lessor. IHC purchased the property in January 1998, retaining the principals of Medical Plaza, Dan and Steve Rideout (the "Rideouts"), as property managers. IHC notified D & K of the sale by letter, which indicated that D & K should continue making payments "at the regularly scheduled time each month" to the Rideouts. Under the terms of the lease, D & K was required to pay rent by the first of each month with a ten-day grace period following.

¶ 3 Prior to the sale of the property to IHC, D & K consistently paid rent late. Medical Plaza at times served D & K with notices to pay or quit, whereupon D & K tendered the overdue rent. D & K was sometimes assessed a late fee when it paid late. Subsequent to IHC's acquisition of the property, D & K's February 1998 rent check was deposited on February 24, 1998, fourteen days after expiration of the grace period. Though D & K's president, Kent Bangerter ("Bangerter"), testified in a deposition that he had no reason to believe February's rental payment was late, D & K contends that the February check was tendered after the grace period's expiration, while IHC argues that February's rent was timely paid. The rent for March 1998 went unpaid throughout the month of March and was not tendered until April 16, 1998, after D & K received a notice of default from IHC. The notice of default was premised on nonpayment of March and April 1998 rent. In accordance with the terms of the lease, IHC's notice declared a forfeiture of the lease and demanded surrender of the subject property within 30 days. Upon receipt of D & K's check for March rent, IHC promptly returned it uncashed to D & K on April 17, 1998. Despite the notice of default's statement to the contrary, April rent was actually cashed by IHC on April 8, 1998, before it sent the notice of default. The record is unclear as to how April rent was tendered by D & K. D & K asserts that it took the check to the Rideouts' secretary. IHC has asserted both that tender was to the Rideouts' secretary, and, to the contrary, that rent was tendered at one of IHC's corporate offices.

¶ 4 From May 1998 until March 1999, D & K continued to tender rent by check each month. IHC did not cash these checks but retained possession of them. IHC sent a letter to D & K addressed as "Dear Tenant," in June 1998 demanding increased rental payments pursuant to the terms of the original lease agreement. Thereafter, IHC sent monthly billing statements and invoices to D & K noting amounts IHC believed were delinquent and demanding the increased rent amount, which D & K tendered each month. In other correspondence in January 1999, IHC, again addressing D & K as "Dear Tenant," demanded that D & K provide proof of insurance to IHC in accordance with the original lease agreement. D & K complied. In March 1999, the parties entered into an escrow agreement governing further collection of payments from D & K and reserving various rights of each party pending resolution of the dispute presently before this court. IHC filed a complaint in the trial court in May 1999, commencing this action on the lease to enforce forfeiture thereof. D & K answered, arguing that the original lease agreement was modified by the parties' course of dealing and IHC should be estopped from enforcing the original lease terms. D & K also argued that IHC's acceptance of April 1998 rent, demand for increased rent, and demand for proof of insurance waived IHC's right to enforce the forfeiture provision of the lease. Eventually, IHC filed a motion for judgment on the pleadings and D & K filed a cross motion for

summary judgment. The trial court's memorandum decision on those motions is the subject of this appeal.

¶ 5 The trial court concluded that D & K had breached the lease by failing to make a rental payment in March 1998. It then addressed D & K's argument that IHC waived its right to enforce the default by way of forfeiture, concluding that IHC had not waived. In addition to many of the facts noted above, the trial court's statement of the facts contains the following: "IHC promptly returned the March and April checks to D & K." D & K argues that the trial court's determination of the waiver issue was in error and that the trial court failed to properly address D & K's estoppel argument.

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 6 "Summary judgment is proper only where 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Peterson v. Coca–Cola USA*, 2002 UT 42, ¶ 7, 48 P.3d 941 (quoting Utah R. Civ. P. 56(c)). However, unlike most cases, the legal conclusions underlying a trial court's grant of summary judgment on a waiver issue are reviewed with some measure of deference. *See State v. Pena*, 869 P.2d 932, 938–39 (Utah 1994) (noting paring back of waiver doctrine in *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935 (Utah 1993), as recognition that de novo review was not appropriate in fact dependent area of waiver). In a waiver case decided on a motion for summary judgment, we must first inquire whether there are disputed material facts. If there are no disputed material facts, we consider all undisputed material facts in the light most favorable to the nonmoving party, *Peterson*, 2002 UT 42 at ¶ 7, 48 P.3d 941, before determining whether the trial court's decision on the application of the law of waiver to those facts falls within the bounds of its discretion.

### II. WAIVER

¶ 7 Waiver is an intensely fact dependent question, requiring a trial court to determine whether a party has intentionally relinquished a known right, benefit, or advantage. *Soter's*, 857 P.2d at 940. In order to find that a waiver occurred, we held in *Soter's* that "a fact finder need only determine whether the totality of the circumstances 'warrants the inference of relinquishment.'" *Id.* at 942 (internal citation omitted). Although "any waiver 'must be distinctly made ... it may be express or implied.'" *Id.* at 940 (quoting *Phoenix, Ins. v. Heath*, 90 Utah 187, 61 P.2d 308, 311 (1936)). *Soter's* established this test as the only one in waiver cases, moving away from many of our earlier rules which were perhaps more narrow but were also more difficult to apply consistently. *Id.* at 938–42.

¶ 8 The fact dependent inquiry and deferential review established by *Soter's* essentially cleaned the slate of the type of categorical waiver rule suggested by D & K—that a landlord's acceptance of rent after a breach waives the landlord's right to declare a forfeiture for the earlier breach. *See id.* at 941 (noting "appellate courts of this state need not attempt to articulate as general principles the specific facts that are required to show intentional relinquishment in particular cases"). We noted in *Soter's* that decisions from this court are bound to "flesh out the law," but noted that such decisions were not meant to reformulate our general statement of the law of waiver. *Id.* In *Geisdorf v. Doughty*, 972 P.2d 67, 71–72 (Utah 1998), we reaffirmed *Soter's* even while clarifying it in the narrow facts presented in that case. *Id.* at 72 (noting clarification but adding that it "should not signal the court's desire to return to the narrow, ambiguous, fact-dependent definitions of [earlier cases]"). Though D & K's suggested rule was previously recognized by this court in *Woodland Theatres, Inc. v. ABC Intermountain Theatres, Inc.*, 560 P.2d 700, 701–02 (Utah 1977), it was implicitly overruled in *Soter's*. 857 P.2d at 942 (noting "only one legal standard required to establish waiver under Utah law"). We decline to depart from our general waiver rule for resolution of this case and turn to its application in the present case.

¶ 9 Given the importance of the facts in a waiver inquiry, it is critical that a trial court

faced with a motion for summary judgment have a complete understanding of those facts. It is evident from the trial court's decision that it did not have such an understanding. While the material facts in this case appear to be undisputed,[2] the trial court misapprehended one material fact. In its statement of the facts, the trial court notes that IHC initially accepted April rent and then promptly returned it to D & K. IHC cashed D & K's April rent check, however, and nothing in the record indicates that April's rent was returned to D & K. Under the totality of the circumstances test required by *Soter's,* the fact that IHC retained D & K's payment for April rent is material. D & K presented the trial court with a list of actions by IHC that D & K believed amounted to waiver. The trial court considered each of them, but it could not have considered the cumulative impact of those facts coupled with the retention of April rent because it apparently believed that the rent was not retained by IHC. Because of the absence of this fact in the trial court's analysis, the grant of summary judgment was premature, at best. Therefore, we remand to the trial court for reconsideration of its prior ruling in light of the correct facts regarding the April payment.

### III. ESTOPPEL

¶ 10 Inasmuch as it may again arise on remand, we will consider D & K's estoppel argument for the guidance of the parties on remand. Although the trial court's decision did not address D & K's estoppel argument, it is readily resolvable as a matter of law. In order to prevail on a claim for equitable estoppel a party must show that the party to be estopped acted in such a way as to induce reasonable reliance by the other party and that allowing the first party to act contrary to its earlier actions would work to the detriment of the relying party. *Nunley v. Westates Casing Servs., Inc.,* 1999 UT 100, ¶ 34, 989 P.2d 1077 (citing *CECO Corp. v. Concrete Specialists, Inc.,* 772 P.2d 967, 969–70 (Utah

1989)). It is evident in this case that there was no action or inaction by IHC that could have induced reasonable reliance by D & K on the ability to make late rental payments.

¶ 11 To meet the first prong of equitable estoppel, D & K is required to show that IHC made a statement or admission, or that it acted in a manner inconsistent with its right to enforce the forfeiture provision of the parties' written lease agreement. *Id.* In this case, D & K must show estoppel by acquiescence because IHC never made any representations that D & K could pay rent late. Indeed, when it took over the subject property from Medical Plaza in January 1998, IHC notified D & K that it should pay rent "at the regularly scheduled time each month." This letter was in accord with the written lease agreement. Assuming, for the sake of argument, that February's rental payment was late, one month's acquiescence in D & K's late payment is insufficient to justify D & K's alleged reliance on IHC's failure to enforce the forfeiture provision of the lease. Estoppel by acquiescence is applicable when "it would be unconscionable to permit a person to maintain a position inconsistent with one in which he ... has acquiesced." 28 Am.Jur.2d *Estoppel and Waiver* § 57 (1966). Permitting IHC to enforce the forfeiture provision of the written lease after D & K's failure to pay rent following a one-month acquiescence in late payment is not unconscionable, and D & K's estoppel argument therefore fails as a matter of law.

### CONCLUSION

¶ 12 The trial court's failure to consider IHC's acceptance of D & K's April rent payment rendered summary judgment inappropriate under the framework we established for waiver cases in *Soter's, Inc. v. Deseret Federal Savings & Loan Ass'n.* However, D & K's estoppel claim fails as a

---

2. There are disputes about whether February's rent was timely paid and whether April rent was paid to the Rideouts' secretary or to one of IHC's corporate offices, but these factual disputes are not material. The timeliness of February's rent is irrelevant to the waiver issue, and the method of tender of April's rent is immaterial because

the April rent check was ultimately cashed by IHC, a corporation that must be charged with knowledge that it cashed the check. *See, e.g.,* 18B Am.Jur.2d *Corporations* § 1671 (1985) (noting that a corporation is bound by knowledge of agents and officers).

matter of law. We remand for further proceedings consistent with this opinion.

¶ 13 Associate Chief Justice DURRANT, Justice RUSSON, Judge BENCH, and Judge BRYNER concur in Justice WILKINS' opinion.

¶ 14 Having disqualified herself, Chief Justice DURHAM does not participate herein, and Justice HOWE did not participate herein; Court of Appeals Judge RUSSELL W. BENCH and District Judge BRYCE K. BRYNER sat.