2009 UT App 155

Rob BAHR, Sherri Bahr, and Ione Senn,
Plaintiffs and Appellants,

v.

Jim IMUS and Melodee Imus, Defendants
and Appellees.

No. 20070933–CA.

Court of Appeals of Utah.

June 11, 2009.

Jared L. Bramwell and Steven M. Kelly,
Draper, for Appellants.

Robert J. Dale and Christian D. Austin,
Salt Lake City, for Appellees.

Before Judges GREENWOOD, THORNE,
and McHUGH.

OPINION

GREENWOOD, Presiding Judge:

¶1 Plaintiffs Rob and Sherri Bahr and
Ione Senn (collectively the Bahrs) appeal the
trial court's grant of summary judgment in

favor of Defendants Jim and Melodee Imus establishing the boundary line between the Bahrs' and Imuses' properties based on a theory of boundary by estoppel. Specifically, the Bahrs argue that summary judgment was inappropriate because there are material facts in dispute and the Imuses are not entitled to judgment as a matter of law. We affirm.

## BACKGROUND

¶ 2 The Imuses purchased their home in 1983. Later that year, the Imuses consulted with their neighbors, the Wymans, who lived in the adjacent home directly west of the Imuses, about constructing a boundary fence (the fence) between their properties. The Wymans were unable to contribute financially, but agreed to the fence construction. Although the Imuses appear to have carried the financial burden of the fence project, the Wymans assisted with the measurements for placement of the fence on the boundary line and with the manual labor necessary to build the fence. Neither party knew, nor did they obtain a survey to determine, the exact boundary between their respective properties. There were, however, stakes and marking pins utilized by the Imuses and the Wymans. They worked together to measure and establish a boundary line, along which they ultimately built the fence. The Imuses and the Wymans treated the fence as the boundary between their properties thenceforth, and the Imuses subsequently installed "improvements, landscaping, and irrigations systems on their side of the fence."[1] Shortly thereafter, the Wymans sold their property to Joe Carlisle, who also treated the fence as the boundary line until he sold the property to the Bahrs in December 1988.

¶ 3 Some time in 2003, a dispute arose between the Bahrs and the Imuses regarding a Russian Olive tree growing on the Imuses' side of the fence. This dispute led to deterioration of the parties' relationship. Soon thereafter, the Bahrs complained to city officials and commissioned a survey of their property. This survey revealed that the fence deviated from the true property line and encroached upon the Bahrs' property from a few inches at the front of the property to nearly five feet at the rear, creating a pie-shaped parcel of land (Disputed Property) over which this dispute centers. Based largely on this survey, the Bahrs sued the Imuses praying for relief based upon several separate legal theories including trespass, private nuisance, and quiet title.[2] After discovery was conducted, the Imuses filed a motion for summary judgment arguing that, based on the undisputed material facts, they are entitled to ownership of the Disputed Property because the boundary was established either by agreement or acquiescence, or in the alternative, that the Bahrs should now be estopped from challenging the boundary.[3] The Bahrs responded, arguing that summary judgment was not appropriate because there are material facts in dispute and the Imuses are not legally entitled to a judgment based upon any of their asserted legal theories.

¶ 4 The trial court determined that the material facts are undisputed and that equity requires that the Bahrs be estopped from now disputing the boundary. Accordingly, the trial court granted the Imuses' motion for summary judgment based on equitable estoppel. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶ 5 The sole issue on appeal is whether the trial court erred in granting summary judgment in favor of the Imuses based on an equitable estoppel theory.[4] We

---

1. Although the parties dispute the "value" of the improvements the Imuses installed over the years, the actual cost of the improvements appears to be in the $7000 to $9000 range.

2. The Bahrs' complaint also contained claims for slander and intentional infliction of emotional distress that were dismissed by stipulation prior to resolution of the summary judgment motions.

3. In addition to the Imuses' motion, the Bahrs filed a motion for partial summary judgment and a motion to compel. At the hearing to resolve all pending motions, the trial court denied the Bahrs' motions. Only the grant of the Imuses' motion is at issue in this appeal.

4. The Bahrs argue that we should take this opportunity to apply the factors set forth in *State v. Pena*, 869 P.2d 932 (Utah 1994), *see id.* at 935–939, to determine the correct standard of review

"review[ ] a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness ... view[ing] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). And, although "[t]he doctrine of equitable estoppel is simply stated, ... it is applicable to a wide variety of factual and legal situations.... Therefore, we properly grant the trial court's decision [thereon] a fair degree of deference." *Department of Human Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997).

## ANALYSIS

 ¶ 6 Granting a party's request for summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Additionally, "Utah law does not allow a summary judgment movant to merely point out a lack of evidence in the nonmoving party's case, but instead requires a movant to affirmatively provide factual evidence establishing that there is no genuine issue of material fact." *Orvis*, 2008 UT 2, ¶ 16, 177 P.3d 600. Utah case law establishes that "[t]he elements of equitable estoppel are '(i) a ... failure to act [that is] inconsistent with a claim later asserted; (ii) reasonable action ... taken ... on the basis of the ... failure to act; and (iii) injury ... would result from allowing [a repudiation of] such ... failure to act.'" *Dahl Inv. Co. v. Hughes*, 2004 UT App 391, ¶ 14, 101 P.3d 830 (alterations and omissions in original) (quoting *CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 969–70 (Utah 1989)); *see also* Black's Law Dictionary 571 (7th ed.1999) (defining equitable estoppel as "[a] defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, *with the result that the other person has been injured in some way*" (emphasis added)).

The Bahrs also cite *Peterson v. Johnson*, 84 Utah 89, 34 P.2d 697 (1934), and argue that in the boundary dispute context, Utah law requires a party asserting equitable estoppel to show that they have made permanent improvements to the property in dispute. To adequately evaluate this contention, we examine *Peterson* more closely.

¶ 7 In *Peterson*, the supreme court addressed a boundary dispute between two adjacent property owners in rural Utah regarding ownership of approximately one acre of land situated between their respective properties. *See id.* at 697. At the heart of the dispute in *Peterson* was a fence separating the properties that had allegedly long-established the boundary line. *See id.* In dicta and without elaboration, the supreme court stated that equitable estoppel did not support the defendant's claim: "So far as is made to appear, no permanent improvements were placed on the land in question and hence defendant is not in a position to invoke the doctrine of equitable estoppel in aid of his claim." *Id.* at 698. In support of this statement, the *Peterson* court cited *Tripp v. Bagley*, 74 Utah 57, 276 P. 912 (1928). Like *Peterson*, *Tripp* also involved a rural property dispute in which one party claimed legal or equitable ownership of the disputed parcel situated along the boundary line between the respective properties. *See generally Tripp*, 74 Utah 57, 276 P. 912. The *Tripp* court determined that equitable estoppel was not appropriate because (1) the party defending title had received rents and profits from and had paid all taxes on the disputed property, and (2) the party asserting estoppel could not have believed that the fence was on the true boundary line and "ha[d] made no improvements" on the disputed property. *Id.* at 918.

 ¶ 8 We do not read these cases to require permanent improvements in order to resolve a residential boundary dispute by equitable estoppel. Neither of these cases expressly defined the elements of equitable estoppel. Further, later cases do not cite *Peterson* and do not include permanent im-

---

for equitable estoppel claims. However, we find such an analysis to be unnecessary because the standard of review for the determination of equitable estoppel is established. *Cf. Department of*

*Human Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997) (applying the *Pena* factors and determining the appropriate standard of review for equitable estoppel determinations).

provements in the required elements of equitable estoppel.[5] Instead, they address whether the party asserting estoppel would suffer real injury if the true boundary line were now enforced. *Cf. Dahl Inv. Co.*, 2004 UT App 391, ¶ 15, 101 P.3d 830 (affirming, with no reference to "permanent improvements," district court's determination that equitable estoppel applied to a portion of the boundary line upon which the asserting party had constructed a driveway, but not to the portion upon which the asserting party had done nothing, because forcing the asserting party "to abandon or remove the driveway would constitute an injury"). We therefore conclude that permanent improvements are not a separate element of equitable estoppel, but are required only insofar as they assist the court in evaluating the "reasonable action" and "injury" elements.

¶ 9 The Bahrs further argue that additional "nuanced requirements" must also be met to establish equitable estoppel, elements that the trial court erred in not considering. More specifically, the Bahrs argue that (1) application of equitable estoppel is disfavored generally, and contrary to public policy in the instant case; (2) wrongdoing or fraud is required of the Bahrs for equitable estoppel to be appropriate; and (3) a certain level of knowledge on the part of both parties is required.[6] For reasons explained more fully below, we disagree with the Bahrs regarding the necessity of these "nuanced requirements."

¶ 10 First, the Bahrs argue that application of the doctrine of equitable estoppel is generally disfavored, especially in the context of resolving boundary disputes, because it is contrary to the Utah Statute of Frauds and Utah recording statutes. The Bahrs cite no binding authority in support of this argument. The Bahrs argue that because Utah law expressly requires transfers of land to be effected through a written instrument, estoppel should not be used to effect a transfer of title based only upon an alleged oral agreement. While we agree that an oral agreement is normally insufficient to effectuate passage of legal title to real property, *see* Utah Code Ann. § 25–5–3 (2007), the doctrine of estoppel in the boundary dispute context has been sanctioned in Utah to provide equitable title to property. In addition, there is no evidence before us that the trial court based its decision on an oral agreement between the parties; rather, the court determined only that it would not be equitable for the Bahrs now to challenge the boundary line to which they had not objected for many years.

¶ 11 Second, the Bahrs argue that the Imuses are allowed to assert estoppel only if the trial court finds that the Bahrs' behavior was fraudulent, misleading, or unconscionable. In support of this, the Bahrs cite *Youngblood v. Auto–Owners Insurance Co.*, 2007 UT 28, 158 P.3d 1088, and *IHC Health Services, Inc. v. D & K Management, Inc.*, 2003 UT 5, 73 P.3d 320. *Youngblood*, an insurance case, involved the application of the equitable theory of promissory estoppel, defined by the court as where one party, in full knowledge of the material facts, makes a promise that turns out to be incorrect to the detriment of the other party who relied upon the promise. *See* 2007 UT 28, ¶¶ 15–16, 158 P.3d 1088. The *Youngblood* court discussed the differences between equitable and promissory estoppel, and clarified that a misrepresentation as to the future is generally required for application of promissory estoppel. *See id.* The court described equitable estoppel as applying to "circumstances where it is not fair for a party to represent facts to be one way to get the other to agree, and then

5. For example, *Dahl Investment Co. v. Hughes*, 2004 UT App 391, 101 P.3d 830, quotes *CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967 (Utah 1989), in describing the elements of equitable estoppel. *See Dahl Inv. Co.*, 2004 UT App 391, ¶ 14, 101 P.3d 830. *CECO*, in turn, cites several cases, none of which require "permanent improvements." *See* 772 P.2d at 969–70.

6. The Bahrs also argue that equitable estoppel is not available to the Imuses because the Imuses

are primarily at fault for the deviation from the boundary line, given that the Imuses measured the boundary and installed the fence. The Imuses respond that this counter-estoppel argument was not raised before the trial court and, thus, is not appropriately before us on appeal. Regardless of whether this argument was preserved, we conclude that the undisputed facts do not establish fault by the Imuses.

change positions later to the other's detriment." *Id.* ¶ 15. We see nothing in *Youngblood* requiring fraudulent, misleading, or unconscionable behavior by the party sought to be estopped. *See generally id.* Therefore, *Youngblood* does not change our analysis.

¶ 12 In *IHC Health Services, Inc.,* the supreme court was faced with an estoppel argument based upon late acceptance of a rent payment. *See* 2003 UT 5, ¶ 11, 73 P.3d 320. The party asserting estoppel in that case argued that IHC Health Services should be estopped from requiring on-time rent payments, because IHC had not objected to a late payment *one* month. *See id.* The supreme court noted that inaction for one month was insufficient to establish estoppel, because more than inaction or silence is required to conclude "it would be unconscionable to permit a person to maintain a position inconsistent with one in which he ... has acquiesced." *Id.* (omission in original) (internal quotation marks omitted). We do not read *IHC Health Services, Inc.* as adding a requirement for equitable estoppel, but simply as describing whether the party acted reasonably based on the facts of that case. Because these cases do not support the position taken by the Bahrs, we decline the invitation to add a requirement of wrongdoing by the party being estopped to the elements of equitable estoppel in the boundary dispute context.

¶ 13 Third, the Bahrs argue that there is a knowledge requirement for equitable estoppel in the boundary dispute context. More specifically, the Bahrs contend that equitable estoppel was inappropriate in this case because they "had [no] actual knowledge that the Imuses were making any supposed improvements to the [D]isputed [Property]," and they "were not in a position to have actual knowledge of the true boundary line." Both of these arguments are unpersuasive. It is not credible that neighbors of twenty years would lack knowledge of improvements made along the separating boundary fence, especially when a tree growing along the boundary fence precipitated the present dispute. Further, it is the knowledge and actions of the Wymans, the Bahrs' predecessors in title, that generates the Imuses' claim of equitable estoppel.[7]

¶ 14 Finally, we examine whether the trial court erred in determining that the Imuses demonstrated that they had used the Disputed Property in reasonable reliance on the Bahrs' inaction and that they would be injured if the Bahrs were allowed to now enforce the true boundary line. *See Dahl Inv. Co. v. Hughes,* 2004 UT App 391, ¶ 14, 101 P.3d 830 (listing the elements of equitable estoppel). After reviewing the parties' competing memoranda and hearing oral arguments, the trial court determined that the Imuses had satisfied the elements of estoppel so as to preclude the Bahrs from now objecting to the placement of the boundary fence. The trial court stated that it based this decision solely on the following undisputed material facts:

1. [The Imuses] have lived in their current home ... since March of 1983.

2. In the summer of 1983, the Imuses met with their neighbors, the Wymans, ... to discuss building a boundary fence along the property line dividing the two residential properties.

3. Though the lots were located in a platted subdivision and the neighbors consulted a plat map, the [Imuses and Wymans] did not know the precise location of the boundary line between their properties, nor did they obtain a survey.

4. The Imuses and Wymans then established a boundary line and the Imuses proceeded to construct a redwood fence on the agreed upon boundary line separating the two properties.

5. The Imuses and Wymans thereafter treated this fence as a boundary between their properties and the Imuses installed improvements, landscaping and irrigation systems on their side of the fence.

6. In 1984, the Wymans sold their property to Joe Carlisle, who also treated this fence as a boundary line between the prop-

---

7. The Bahrs' argument that they cannot be bound by the actions of their predecessors is unavailing. *See Staker v. Ainsworth,* 785 P.2d 417, 423 (Utah 1990); 28 Am.Jur.2d *Estoppel and Waiver* § 133 (1964).

erties until he sold the property to the [Bahrs], in December of 1988.

7. No change in the treatment of the boundary line by the parties occurred until sometime in 2002 or 2003.

8. During this ... near 20 year period, the [Imuses], in addition to installing a sprinkling system, landscaped the property to their liking, which included admitted costs of improvements of $7000 to $9000.

(Footnotes omitted.) [8]

¶ 15 Based on these undisputed material facts, the trial court concluded that the Wymans and Imuses had mutually established a boundary line between their respective properties. The trial court also determined that, in reasonable reliance on this established boundary line, the Imuses built a fence as a property line marker and installed improvements on the Disputed Property including "a shed, koi pond, and landscaping up to the fence line." The trial court continued, stating that neither of the Bahrs' predecessors had objected to the fence line and that, for a significant time, the Bahrs "did nothing to prevent the [Imuses] from maintaining and adding further improvements, such as vegetation and fixtures to the [Disputed Property]." Following this, the trial court summarized the facts from *Dahl Investment Co. v. Hughes*, 2004 UT App 391, 101 P.3d 830.[9] The trial court then stated that, "[j]ust as in *Dahl* [], ... the [Bahrs] may have been legally entitled to have the plat map boundary established as the legal boundary but ... their actions (and the actions of their predecessors) estop them from [now] asserting their legal rights," because "the [Imuses] would be injured if [the Bahrs] were allowed to take possession of the [Disputed Property]." Concluding that all three elements of equitable estoppel had been met, the trial court entered summary judgment in favor of the Imuses on that theory and denied all other relief requested.

¶ 16 Based on the undisputed material facts, the trial court correctly determined that the Imuses established each of the three required elements of equitable estoppel, *see Dahl*, 2004 UT App 391, ¶ 14, 101 P.3d 830, and were entitled to ownership of the Disputed Property as a matter of law, *see Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

## CONCLUSION

¶ 17 We agree with the trial court that precisely when the property dispute began is

8. In making finding number seven, the trial court acknowledged that precisely when the boundary dispute began "is one of the key factual disputes in this case," but nevertheless determined that it was not material and, thus, did not preclude the entry of summary judgment. This, likewise, is the only factual dispute the Bahrs refer to on appeal. Because "acquiescence time" is not a requisite element of equitable estoppel, we agree with the trial court that this factual dispute is immaterial for summary judgment purposes.

9. The Bahrs also argue that the trial court erred in relying on *Dahl Investment Co. v. Hughes*, 2004 UT App 391, 101 P.3d 830, because it is factually distinguishable from the present appeal. In particular, the Bahrs argue that *Dahl* is inapposite to the present case because (1) *Dahl* involved an appeal after a full trial, whereas this appeal follows a grant of summary judgment; (2) unlike the party seeking estoppel in *Dahl*, "the Imuses are not hapless, unwitting victims"; (3) the Bahrs had no notice of the Imuses' alleged improvements; and (4) the landscaping and irrigation in the Imuses' yard does not qualify as a permanent improvement, as did the driveway in *Dahl*. These distinctions are not persuasive, especially given the broadened discretion we grant to the trial court's estoppel determination. *See Department of Human Servs. ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997). Moreover, the trial court did not rely exclusively on *Dahl*, but merely found *Dahl* to be "instructive in this case." The trial court summarized *Dahl* as follows: a fence between two properties established the legal boundary line; when the fence was torn down, the plaintiff didn't object to eighteen-month construction of a driveway crossing that legal boundary; and even though the plaintiff may have been entitled to enforce the legal boundary, the plaintiff is estopped from doing so now that the driveway is built because removing the driveway would injure the defendants. The trial court then stated that, "[j]ust as in *Dahl*" the Bahrs may have been legally entitled to the Disputed Property, but their action and the action of their predecessors estops them from now asserting their legal rights. Because *Dahl* appears to be, as the trial court put it, "instructive in this case," we conclude that the trial court did not abuse its discretion in considering *Dahl* when making its decision. *See id.*

not material, that there are no disputed material facts, and that the Imuses are entitled to summary judgment as a matter of law based on an equitable estoppel theory. Affirmed.

¶ 18 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, and CAROLYN B. McHUGH, Judge.