2005 UT 6

**STATE of Utah, Plaintiff and Respondent,**

v.

**Kelly Lafe GARNER, Defendant and Petitioner.**

No. 20030406.

Supreme Court of Utah.

Jan. 25, 2005.

Mark L. Shurtleff, Att'y Gen., Joanne Slotnik, Asst. Att'y Gen., for plaintiff.

Scott L. Wiggins, Salt Lake, for defendant.

On Certiorari to the Utah Court of Appeals

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 Petitioner Kelly Garner seeks review of the court of appeals' dismissal of his case for failure to file a timely notice of appeal. Garner argues that modifications to the original trial court judgment extended the appeals period, and that the court of appeals therefore erred in dismissing his appeal as untimely. For the reasons set forth below, we affirm.

## BACKGROUND

¶ 2 This case arises from a judgment entered against Garner on July 26, 2001, following his conditional plea [1] to one count each of criminal mischief and burglary. The trial court sentenced Garner to prison and ordered restitution, the amount of which remained open at the time judgment was entered.[2] The order contained the following notation: " 'CONDITIONAL GUILTY PLEA' entered conditioned on being able to appeal detainer motion to dismiss." A month later, on August 21, 2001, the trial court modified the judgment order to reflect more specifically the conditional nature of the plea. On September 20, 2001, Garner filed a notice of appeal, arguing that although fifty-five days since the original judgment had passed, the notice of appeal was not untimely because the modifications made in August were material and substantial, thus restarting the thirty-day appeals period.

¶ 3 On May 14, 2002, prior to the court of appeals' decision on Garner's first appeal, the district court reentered the judgment, noting that the State had satisfied the conditions of the plea and setting the amount of restitution

---

1. The plea was conditioned, among other things, on the State's sending a letter to the Alabama Kilby Correctional Facility recommending no additional time for the offenses to which Garner pled guilty in Utah.

2. Although the exact amount of restitution was not set when the trial court issued its judgment order, Garner knew that he would have to pay

restitution as well as the approximate amount he would have to pay. At the July 3, 2001 "Change of Plea" hearing the State asserted that Garner broke into the business he burglarized with a crowbar, cut the telephone and the alarm wires, and ransacked the business, causing over $5,000 in damages.

at $1,922.29. The following was added to the July 26, 2001 order:

> 5/14/2002 Conditions of plea satisfied by the state: State returned $350.00 to defendant and wrote letter to Alabama Kilby Correctional Facility, recommending no additional time for these guilty pleas. Restitution is ordered in the amount of $1922.29. The balance of the forfeited funds in the amount of $349.00 is applied to restitution.

¶ 4 On June 13, 2002, Garner filed a second notice of appeal with the court of appeals, arguing that the May 14, 2002 modifications created a new final judgment for purposes of appeal because the modifications were material and substantially affected his rights. The court of appeals had still not issued a decision on Garner's first appeal at the time Garner filed his second appeal.

¶ 5 On July 11, 2002, the court of appeals issued an unpublished opinion, dismissing Garner's first appeal for lack of jurisdiction. *State v. Garner*, 2002 UT App 238 (per curiam). The court held that, for purposes of appeal, the date of final judgment was July 26, 2001, and consequently Garner's first appeal, filed fifty-five days later, was untimely. *Id.* Moreover, the court of appeals held that neither the August 21, 2001 nor the May 14, 2002 modification constituted a material change to the judgment. *Id.*

¶ 6 On March 13, 2003, the court of appeals issued a second unpublished opinion dismissing the second appeal for lack of jurisdiction. *State v. Garner*, 2003 UT App 72 (per curiam). This opinion expressly relied on the court's previous decision in response to Garner's first appeal, noting that, "[p]revious decisions of this court on identical issues are binding." *Id.* at *1. Garner then filed a petition for a writ of certiorari to this court, arguing that the court of appeals erred in summarily dismissing his second appeal based on a prior panel's determination that the May 2002 modifications were immaterial. He now asks this court to "provide a clear and concise statement that modifications such as those in the instant case constitute

material modifications" rendering a judgment final for purposes of appeal.

## STANDARD OF REVIEW

¶ 7 "On certiorari, we review the court of appeals' decision for correctness." *State v. Dean*, 2004 UT 63, ¶ 7, 95 P.3d 276.

## ANALYSIS

### I. EFFECT OF GARNER'S FIRST APPEAL ON HIS SECOND APPEAL

¶ 8 The court of appeals relied in its opinion on the principle of stare decisis to dismiss Garner's second appeal. Stating that "[p]revious decisions of this court on identical issues are binding," the court concluded that because it had previously determined that modifications made to the July 26, 2001 judgment were immaterial, the second appeal, like the first, was untimely. *Garner*, 2003 UT App 72, 2003 WL 21290829. The court therefore dismissed the second appeal for lack of jurisdiction. *Id.* Although we agree that the court of appeals properly dismissed Garner's second appeal for the reasons described more fully herein, we believe it important to clarify that the doctrine of res judicata, rather than stare decisis, properly applies in a situation such as this one.

> [S]tare decisis applies [in contrast to res judicata] even where different parties are involved in the later case, in which a prior decision is invoked as a precedent ... Also, stare decisis is based on the legal principle or rule involved in a prior case, not on the judgment which resulted from that case.

20 Am.Jur.2d Courts § 148. In contrast, the doctrine of res judicata, " 'precludes the relitigation of all issues [and claims] that could have been litigated as well as those that were, in fact, litigated in the prior action.' " *Buckner v. Kennard*, 2004 UT 78, ¶ 12, 99 P.3d 842 (quoting *Macris & Assoc. v. Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214 (citation omitted)).

¶ 9 Claim preclusion,[3] has three requirements:

---

3. Issue preclusion, a second branch of res judica-

ta, does not apply here because it "arises from a

First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 34, 73 P.3d 325 (internal quotations omitted).

¶ 10 The present case satisfies the first prong of claim preclusion because the two appeals involved the same parties, specifically Garner and the State. The second requirement was also met because the claim in question in the second appeal, the materiality of the May 14, 2002 modifications, had been decided in the first appeal.[4] Finally, the court of appeals' decision to dismiss Garner's first appeal was final, decided on the merits of the materiality of the modifications. Therefore, claim preclusion properly applies here. The next issue, which we address below, is whether Garner's second appeal was timely. We find that it was not.

## II. TIMELINESS OF THE NOTICE OF APPEAL

█ ¶ 11 The rule governing amended judgments is clear:

[W]here a belated entry merely constitutes an amendment or modification not changing the substance or character of the judg-

ment, such entry is merely a nunc pro tunc entry which relates back to the time the *original* judgment was entered, and does not enlarge the time for appeal; but where the modification or amendment is in some material matter, the time begins to run from the time of the modification or amendment.

*Adamson v. Brockbank*, 112 Utah 52, 185 P.2d 264, 268 (1947) (emphasis added).[5] Thus the key issue in claims such as Garner's is whether a material modification of the judgment has occurred.

### A. Materiality of the August 21, 2001 Modification

█ ¶ 12 We first consider whether the August 21, 2001 modification to the July 21, 2001 judgment materially altered the substance of the judgment, thereby constituting a new final judgment for purposes of appeal.[6] The modification Garner refers to is a notation added to the description of his plea as conditional. We agree with the court of appeals that this notation was not a material change to the judgment.

█ ¶ 13 As the court of appeals observed, Garner's plea was entered as a *Sery*[7] plea. Further, the original order already explicitly stated in the last paragraph " 'CONDITIONAL GUILTY PLEA' entered conditioned on being able to appeal detainer motion to dismiss." In other words, the original judgment stated that it was based on a condition-

---

different cause of action and prevents parties or their privies from relitigating facts and issues in the second suit that were fully litigated in the first suit." *Snyder v. Murray City Corp.*, 2003 UT 13 at ¶ 35, 73 P.3d 325 (internal quotations omitted). Because the second appeal in the present case does not arise from a different cause of action, issue preclusion is not applicable.

4. Although Garner himself did not raise the materiality argument in his first appeal because the restitution amount had not yet been determined, the court of appeals nevertheless addressed the restitution amount as well as the August 21, 2001 notation entered to reflect the conditional nature of the plea, holding that neither the August nor the May modifications constituted a material change to the judgment.

5. In *Adamson*, the modification "changed an inconsistent judgment to one of consistency, ren-

dering the defendant ... liable when there was previously some doubt existing as to its liability.... The order amending the judgment was a modification of a material matter and enlarged a right running to the plaintiff." 185 P.2d at 268.

6. Although Garner argued that this modification was material in his first appeal, which is not before this court, we discuss it here to clarify the meaning of the term "material modification."

7. *See State v. Sery*, 758 P.2d 935, 939 (Utah Ct.App.1988). Under *Sery* a defendant can reserve his right to appeal the trial court's denial of a motion despite entry of a guilty or no contest plea. In this case, the transcript of the July 26, 2001 sentencing proceeding before the district court judge indicates that Garner entered his plea pursuant to *Sery*, reserving his right to appeal the court's denial of the State's detainer motion.

al plea, and the later addition to the order further referencing that fact was a redundant addition, not a material change. *See, e.g., Nielson v. Gurley*, 888 P.2d 130, 133 (Utah Ct.App.1994) (holding that clerical clarification indicating plaintiff's entitlement to his taxable costs, in addition to attorney fees, was "not of sufficient importance to change the character of the judgment" and was "[i]ndeed ... completely unnecessary because costs are awarded as a matter of course to the prevailing party unless the court otherwise orders").

### B.  Materiality of the May 14, 2002 Modification

■ ¶ 14 We next consider whether the May 14, 2002 modification determining the amount of restitution created a new final judgment and began a new time period for appeals as Garner contends. In support of this contention, Garner cites *ProMax Development Corp. v. Raile*, 2000 UT 4, 998 P.2d 254, which held that "orders made on attorney fees subsequent to ... judgment were modifications or amendments in a 'material matter.'" *Id.* at ¶ 11. In *ProMax* we reasoned as follows:

> Where attorney fees are awarded to a party ... and the amount is not stated in the judgment rendered on the merits of the case, and evidence must be taken afterwards by the trial court either by affidavit or live testimony, there is no final judgment for the purposes of appeal until the amount of the fees has been ascertained and granted.

*Id.* at ¶ 12.  Garner contends that restitution and attorney fees are analogous and that our reasoning in *ProMax* thus applies in the instant case.  We disagree.

¶ 15 Attorney fees and restitution are not comparable for the purpose of determining when a judgment is final.  First, the time required for a trial court to determine attorney fees is relatively short.  This is because the work supporting fee awards ends when the trial ends, and although evidence in the

form of testimony and affidavits may be needed in order to determine the exact amount, there is no continued accrual of fees. The amount due is thus readily ascertainable. In contrast, restitution awards may depend on ongoing expenses, such as medical care or lost wages, which are not necessarily fully ascertainable until months following entry of judgment. *See* Utah Code Ann. § 77–38a–302 (2003).[8]  If the same rule of finality we have applied to attorney fees were applied to restitution fees, a defendant's right to appeal in criminal cases could be significantly delayed.

■ ¶ 16 Additionally, civil cases and criminal cases implicate principles of judicial economy in different ways.  While we reasoned in *ProMax* that piecemeal appeals are not in the interest of judicial economy, the same considerations mean little in the context of criminal cases.  Conservation of judicial resources cannot outweigh a criminal defendant's right to appeal.  In *ProMax*, we held that, "in the interest of judicial economy," attorney fees must be determined before the judgment becomes final for purposes of an appeal, and that such a holding "will 'enabl[e] an appellant to appeal all issues, including an award of attorney fees, in a single notice of appeal.'"  2004 UT 4 at ¶ 15, 84 P.3d 1171 (quoting *Meadowbrook, LLC v. Flower*, 959 P.2d 115, 119 (Utah 1998)).  A criminal defendant, on the other hand, would frequently be disadvantaged by staying the time for filing an appeal until an exact amount for restitution could be determined.  Because a criminal defendant has more at stake than a civil defendant, the rationale underlying *ProMax* does not apply in criminal cases.  For these reasons, Garner's reliance on *ProMax* is misplaced.

### CONCLUSION

¶ 17 We hold that where orders for restitution remain open to be decided at a later date, the subsequent entry of the amount of restitution is not a new and final judgment for purposes of appealing the underlying

---

8.  This section identifies various factors a court should consider in determining the appropriate restitution amount in a criminal case. Although this statute was not in effect at the time the trial court entered Garner's judgment, there was a similar version in place in August, 2001. *See* Utah Code Ann. § 76–3–201(8)(b) (1999)(amended 2002).

merits of a criminal conviction. Entering a restitution amount is more like a clarification of a judgment than a material modification because the inclusion does not "chang[e] the substance or character of the judgment." *Nielson*, 888 P.2d at 132 (internal quotations omitted). Accordingly, the decision of the court of appeals is affirmed.

¶ 18 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.