2008 UT 73

**IHC HEALTH SERVICES, INC., a Utah non-profit corporation, Plaintiff and Appellee,**

v.

**D & K MANAGEMENT, INC., a Utah corporation, Defendant and Appellant.**

**No. 20061017.**

Supreme Court of Utah.

Oct. 24, 2008.

D. Matthew Moscon, Lauren A. Shurman, Salt Lake City, for plaintiff.

Michael N. Zundel, James C. Swindler, Glenn R. Bronson, Salt Lake City, for defendant.

---

## AMENDED OPINION

DURRANT, Associate Chief Justice:

### INTRODUCTION

¶ 1 In this case, a landlord, IHC Health Services, Inc. ("IHC"), seeks to eject its tenant, D & K Management ("D & K"), for breach of its lease (the "Lease") because of a late rental payment. The district court granted summary judgment in favor of IHC and awarded attorney fees to IHC pursuant to a provision in the Lease. D & K appeals, asserting that the district court erred when it (1) held that, as a matter of law, IHC did not waive its right to terminate the Lease; (2) refused to consider D & K's untimely-raised defense of substantial compliance; and (3) awarded attorney fees to IHC. We conclude that the district court appropriately granted summary judgment in favor of IHC on the issue of waiver because, under the totality of the circumstances, no reasonable fact finder could conclude that IHC intended to waive its right to terminate the Lease. We also affirm the district court's decision to refuse to consider D & K's untimely-raised substantial compliance defense. But we reverse the district court's award of attorney fees.

### BACKGROUND

¶ 2 The parties do not dispute the underlying material facts. In 1994, D & K leased space in a shopping center in Murray, Utah, from Medical Plaza 9400. D & K uses the space to operate a sexually oriented business, the Southern Xposure private club. In January 1998, IHC purchased the shopping center from Medical Plaza 9400 with plans to build a state-of-the-art medical complex. IHC notified D & K by letter that it had purchased the shopping center.

¶ 3 The initial term of the Lease was five years, but it includes three five-year renewal options. The Lease provides that the tenant must pay rent "in advance of the first day of each calendar month during the term of the Lease." In addition, the Lease provides that "fail[ure] to pay any rental or any other sum due hereunder within ten [10] days after the same / [sic] shall be due" constitutes default. And upon occurrence of default, the landlord may "[t]erminate this Lease by written notice to the Tenant.... [A]nd the Landlord may recover from Tenant all damages it may incur by reason of Tenant's breach, including ... reasonable attorney's fees." Section 23 of the Lease also provides as follows:

> In the event that at any time during the term of this Lease either Landlord or the Tenant institutes any action or proceeding against the other relating to the provisions of this Lease or any default hereunder, then the unsuccessful party in such action or proceeding agrees to reimburse the successful party for the reasonable expenses of such action including reasonable attorney's fees, incurred therein by the successful party.

¶ 4 IHC sought to terminate the Lease after D & K failed to pay rent for March 1998 during that month. D & K did, however, deliver a check for its rental payment for April 1998 on April 8. IHC accepted and cashed the check. D & K still had not sent the March 1998 rental payment on April 14, 1998, when IHC sent D & K a Notice of Default and Forfeiture of Lease Agreement. The notice directed it to surrender possession of the leased premises within thirty days. On April 16, having received the Notice of Default, D & K attempted to deliver a

check for the March 1998 rental payment to IHC. Although IHC's property managers accepted D & K's March rent check at their office and issued a receipt, IHC promptly returned the check uncashed to D & K on April 17, 1998.

¶ 5 D & K asserts that IHC waived its right to terminate the Lease by accepting and cashing the check for the April 1998 rental payment and by sending certain correspondence to D & K. From June 1998 to January 1999, IHC sent numerous letters and invoices to D & K demanding, among other things, that D & K pay increased rent and maintain insurance according to the terms of the Lease. In each of these letters, IHC addressed D & K as "Dear Tenant." D & K timely sent rent checks each month from May 1998 until March 1999. IHC retained the checks but did not cash them.

¶ 6 In March 1999, the parties entered into an agreement to hold all rental payments in escrow and preserve the parties' then-existing rights. Shortly thereafter in May 1999, IHC sued, alleging breach of the Lease. IHC sought ejectment, a declaratory judgment that D & K was in breach, damages for breach, and attorney fees. D & K's answer invoked ten affirmative defenses, including waiver, estoppel, and unconscionability. D & K did not specifically invoke the defense of substantial compliance in its Answer.

¶ 7 IHC moved for a declaratory judgment that D & K had forfeited the Lease and that all of D & K's affirmative defenses failed as a matter of law. IHC pointed out that D & K admitted that it had paid the March rent late. IHC argued that it did not, as a matter of law, waive its right to terminate the Lease. D & K moved for summary judgment in its favor on the affirmative defenses of waiver and equitable estoppel. Although IHC's motion sought declaratory judgment that D & K had forfeited the Lease and that all of D & K's defenses failed as a matter of law, D & K's Opposition and Motion for Summary Judgment raised only waiver and equitable

estoppel as defenses. D & K did not raise the doctrine of substantial compliance in any pleading or motion in response to IHC's motion.

¶ 8 The district court granted summary judgment in favor of IHC, ruling that D & K's waiver defense failed as a matter of law and that it had forfeited the Lease. The district court did not directly address D & K's equitable estoppel defense. But its memorandum decision erroneously noted that IHC had returned the April 1998 rent check to D & K uncashed. D & K appealed the ruling to this court.

¶ 9 This court took up the matter in *IHC Health Services, Inc. v. D & K Management, Inc. ("D & K I")*.[1] We ruled that although the district court failed to address D & K's equitable estoppel argument, the argument failed as a matter of law.[2] As to waiver, we reiterated the rule from our previous cases that although waiver is intensely fact dependent, "a fact finder need only determine whether the totality of the circumstances warrants the inference of relinquishment."[3] We stated that because the district court had misapprehended the fact that IHC accepted the April 1998 rental payment, it could not have properly considered the totality of the circumstances.[4] Therefore, we remanded the case to the district court for reconsideration in light of the correct facts.[5]

¶ 10 On remand, IHC filed a new Motion for Summary Judgment on its claims for forfeiture, declaratory judgment, and breach of contract. D & K argued only waiver as a defense in its Opposition to Summary Judgment and did not raise the doctrine of substantial compliance. The district court again granted summary judgment in favor of IHC and ruled that it was entitled to judgment as a matter of law on its claims for forfeiture, declaratory judgment, and breach of contract.

¶ 11 D & K first asserted substantial compliance as a defense to forfeiture when IHC moved for a certification of finality under

---

1. 2003 UT 5, 73 P.3d 320.

2. *Id.* ¶ 10.

3. *Id.* ¶ 7 (internal quotation marks omitted).

4. *Id.* ¶ 9.

5. *Id.*

rule 54(b) to recover possession of the property.[6] The district court refused to hear the substantial compliance argument because the claim of forfeiture had already been decided. The district court certified the judgment as final, and D & K appealed.

¶ 12 Although the district court certified the decision as a final judgment, the court of appeals dismissed the appeal for lack of jurisdiction and remitted the case to the district court to resolve the remaining issues in the case, including attorney fees and damages. After the remittitur from the court of appeals, D & K moved the district court to reconsider the forfeiture claim in light of its substantial compliance argument. The district court denied the motion, holding that D & K

never timely raised this argument and is precluded from making it at this late date on grounds of res judicata and/or specifically law of the case.... It is undisputed that [D & K] could have raised this defense at some earlier point, and certainly prior to or at the time of appealing the first judgment entered by this court's predecessor (and again by this court following remand by the Utah Supreme Court, which latter decision [D & K] now wants reconsidered). In fact, [D & K] did not previously raise or argue the defense of substantial compliance. It had a fair opportunity to present and have determined the defense of substantial compliance, but elected not to do so.

The district court held that it did "not believe that it ha[d] the right or discretion to consider new issues that could have been raised, but were not, from the point of remand." It noted that it would decline to consider D & K's substantial compliance argument even if it had discretion because, having been briefed on the defense, it "d[id] not find that D & K ha[d] presented the Court with facts that would support a substantial compliance defense." The district court also concluded that none of the exceptions to the law of the case doctrine excused D & K's failure to argue substantial compliance.

¶ 13 IHC sought to resolve the case more expeditiously by voluntarily dismissing its claim for damages resulting from D & K's breach of the Lease and moving the court to award attorney fees. IHC expressly waived its claim to attorney fees under section 17.2(c) of the Lease, which provides for damages resulting from the tenant's breach. Instead, IHC sought attorney fees under section 23 of the Lease, which provides for an award of attorney fees to the prevailing party "in the event that at any time during the term of this Lease either the Landlord or the Tenant institutes any action or proceeding against the other relating to the provisions of this Lease or any default hereunder." D & K argued that IHC was not entitled to attorney fees under section 23 of the Lease because, under IHC's theory of the case, the Lease terminated prior to IHC filing the lawsuit. In addition, D & K objected to the amount of the fee award because IHC had submitted fees for matters, such as the appeal, on which it did not prevail. Finally, D & K argued that IHC should not be awarded fees because it had failed to carry its burden of proving the reasonableness of its fees. The district court held that the Lease had not reached the end of its stated five-year term and that, until the district court determined that IHC's ejectment action was successful, the Lease was not terminated. After IHC revised and categorized its fees in response to D & K's objections, the district court awarded IHC attorney fees and costs in the amount of $307,264.90. D & K appeals, and we have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

**ANALYSIS**

¶ 14 We will first discuss whether the district court correctly granted summary judgment to IHC on the issue of waiver. We will then consider whether the district court was within its discretion in refusing to reopen the issue of forfeiture to consider D & K's untimely-raised substantial compliance defense. Finally, we will discuss whether the district court properly awarded attorney fees under the Lease.

6. Utah R. Civ. P. 54(b).

## I. AS A MATTER OF LAW, IHC DID NOT WAIVE ITS RIGHT TO TERMINATE THE LEASE

¶ 15 The district court granted summary judgment in favor of IHC on its claim of forfeiture, rejecting D & K's defense of waiver. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[7] We review a district court's grant of summary judgment for correctness.[8] Although the parties to this appeal do not dispute the underlying material facts concerning the payment and acceptance of rent, they do dispute whether those facts amount to waiver as a matter of law. Because waiver is intensely fact-dependent, district courts should exercise care when granting summary judgment on this issue. But a district court may grant summary judgment in favor of a party on the issue of waiver if no reasonable fact finder could conclude that the party intended to waive its rights.

### A. Waiver Is the Intentional Relinquishment of a Known Right

¶ 16 In *Soter's, Inc. v. Deseret Federal Savings & Loan Association*, we held that waiver is the intentional relinquishment of a known right.[9] To establish waiver, a defendant must show that the plaintiff had (1) an existing right, (2) knowledge of its existence, and (3) an intent to relinquish the right.[10] "[W]aiver must be distinctly made, although it may be express or implied."[11] In *D & K I*, we held that "[w]aiver is an intensely fact dependent question."[12] We reiterated the standard from *Soter's:* " 'a fact finder need only determine whether the totality of the circumstances warrants the inference of relinquishment.' "[13]

¶ 17 The terms of the Lease make it clear that IHC had the right to terminate the Lease, and IHC's Notice of Default evinces IHC's awareness of that right. The parties' only dispute in this regard is a factual one: whether IHC's actions in accepting the April rent and sending correspondence about the Lease constituted "distinctly made" acts showing IHC's intent to waive its right to terminate the Lease. Because the dispute is factual in nature, D & K argues that the district court erred in granting summary judgment to IHC in that it failed to draw factual inferences in D & K's favor.

### B. Although It Is a Fact–Dependent Question, Waiver May Appropriately Be Decided on a Motion for Summary Judgment

¶ 18 A district court should exercise care in granting summary judgment on fact-dependent questions. We have held that

> [a] district court is precluded from granting summary judgment "if the facts shown by the evidence on a summary judgment motion support more than one plausible but conflicting inference on a pivotal issue in the case ... particularly if the issue turns on credibility or if the inferences depend upon subjective feelings or *intent.*"[14]

¶ 19 Although it should proceed with care in such cases, a district court may nevertheless resolve appropriate cases on summary judgment as a matter of law.[15] Summary judgment requires only that there is "no *genuine* issue as to any material fact and that the moving party is entitled to

---

7. Utah R. Civ. P. 56(c).

8. *Krantz v. Holt*, 819 P.2d 352, 353 (Utah 1991).

9. 857 P.2d 935, 940–42 (Utah 1993).

10. *Id.* at 940.

11. *Id.* (internal quotation marks omitted).

12. *IHC Health Servs., Inc. v. D & K Mgmt., Inc.*, 2003 UT 5, ¶ 7, 73 P.3d 320.

13. *Id.* (quoting *Soter's, Inc.*, 857 P.2d at 940 (citation omitted)).

14. *Uintah Basin Med. Ctr. v. Hardy*, 2008 UT 15, ¶ 19, 179 P.3d 786 (emphasis in original) (quoting 73 Am.Jur.2d. *Summary Judgment* § 46 (2001)).

15. *See, e.g., Am. Sav. & Loan Ass'n v. Blomquist*, 21 Utah 2d 289, 445 P.2d 1, 3 (1968); *Olympus Hills Shopping Ctr. Ltd. v. Smith's Food & Drug Ctrs., Inc.*, 889 P.2d 445, 461 (Utah Ct.App.1994).

judgment as a matter of law."[16] The word "genuine" indicates that a district court is not required to draw every possible inference of fact, no matter how remote or improbable, in favor of the nonmoving party. Instead, it is required to draw all *reasonable* inferences in favor of the nonmoving party. Our standard for waiver—that " 'a fact finder need only determine whether the totality of the circumstances warrants the inference of relinquishment' "—points clearly to the summary judgment standard in this case:[17] Summary judgment is appropriate if, under the totality of the circumstances, no reasonable fact finder could conclude that the plaintiff intended to waive its rights.

### C. As a Matter of Law, IHC Did Not Waive Its Right to Terminate the Lease

¶ 20 Applying this standard to the facts of this case, IHC knew of its right to terminate the Lease and made clear its intent to exercise its right to terminate the Lease. No reasonable fact finder could have found otherwise. First, as D & K noted in its brief, IHC's intent at the time it purchased the shopping center was to "get most of the tenants out of there." Second, after accepting rent for April 1998 but before D & K tendered rent for March 1998, IHC sent the Notice of Default to D & K instructing it to surrender possession of the premises. IHC sent this letter while it had the right to terminate the Lease because D & K still had not paid rent for the month of March. Third, although IHC subsequently accepted a check for the March 1998 rental payment and issued D & K a receipt, it immediately returned the check uncashed. Finally, the district court, which considered the totality of the circumstances, took IHC's ultimate development plan for the shopping center and its surroundings into account. Those plans included a state-of-the-art medical complex and related facilities, which are incompatible with the continued operation of D & K's business. Thus, no reasonable fact finder

could conclude that IHC intentionally waived its right to remove D & K from the property.

¶ 21 D & K argues that certain facts could indicate IHC's intent to waive, but none is sufficient to raise a genuine issue of material fact. First, D & K points out that IHC accepted rent for the month of April 1998. Yet IHC exercised its right to declare a forfeiture *after* it accepted the April rent but while March rent remained unpaid. Thus, D & K was still in default at the time IHC terminated the Lease by sending the Notice of Default. Second, IHC sent correspondence to D & K addressed "Dear Tenant," directing it to continue complying with terms of the Lease. This does not raise a genuine issue of material fact because nothing in the correspondence addresses, much less waives, IHC's right or intent to terminate the Lease. Each of the provisions IHC sought to enforce relates to protection of the leased property or the right to receive rent in the event the Lease would be upheld. It would be poor public policy to suggest that tenants are exempt from complying with such lease provisions during the dispute resolution period or that landlords who seek to enforce such provisions risk waiving their right to terminate for breaches of the lease.

¶ 22 In light of these facts, we agree with the district court, which held that

> [u]nder the totality of the circumstances and the undisputed facts presented to this Court, IHC at no time distinctly and intentionally relinquished its right to terminate the Lease after D & K's failure to pay rent in March 1998, but rather thereafter always pursued a course of action consistent with an intent to terminate the Lease and protect its rights thereunder.

¶ 23 As the district court held, no reasonable fact finder could conclude that IHC intended to waive its right to terminate the Lease and recover the property in light of the undisputed facts. D & K's waiver defense fails as a matter of law. Therefore, we affirm the district court's grant of summary judgment in favor of IHC.

---

**16.** Utah R. Civ. P. 56(c) (emphasis added).

**17.** *D & K I,* 2003 UT 5, ¶ 7, 73 P.3d 320 (quoting *Soter's, Inc.,* 857 P.2d at 940 (citation omitted)).

## II. THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN RE-FUSING TO CONSIDER D & K'S UN-TIMELY–RAISED SUBSTANTIAL COMPLIANCE DEFENSE

¶ 24 We will now discuss whether the district court acted within its discretion under the law of the case doctrine when it refused to consider D & K's untimely-raised substantial compliance defense. We will then discuss the three exceptions to the law of the case doctrine, which, if applicable, would require the district court to reconsider the forfeiture issue and address the substantial compliance defense.

¶ 25 We affirm the district court's refusal to reopen the issue of forfeiture for two reasons. First, because the district court previously decided the issue of forfeiture, the law of the case doctrine gave the district court discretion to refuse to reopen the issue. Second, none of the exceptions apply to excuse D & K's failure to raise substantial compliance in a timely manner.

### A. The Law of the Case Doctrine Dictates that Decisions Made on Issues During One Stage of a Case Are Binding on Successive Stages of the Same Case

¶ 26 The law of the case doctrine encompasses several different principles related to the binding effect of a decision on subsequent proceedings in the same case.[18] Simply stated, under the law of the case doctrine, "a decision made on an issue during one stage of a case is binding in successive stages of the same litigation."[19] Thus, the doctrine allows a court to decline to revisit issues within the same case once the court has ruled on them. In this way, the law of the case doctrine acts much like the doctrine of res judicata—furthering the goals of judicial economy and finality—but within a single case.[20]

### 1. The Law of the Case Doctrine May Give the District Court Discretion to Decline to Revisit Issues Already Decided

¶ 27 Depending on the procedural posture of a case at the time the law of the case doctrine is invoked, the district court may or may not have discretion to reconsider a prior decision it has made. While a case remains pending before the district court prior to any appeal, the parties are bound by the court's prior decision, but the court remains free to reconsider that decision.[21] It may do so sua sponte or at the suggestion of one of the parties. And this discretionary power of reconsideration includes the right of the district court to decline to reopen a matter it has already decided.[22] As long as the case has not been appealed and remanded, reconsideration of an issue before a final judgment is within the sound discretion of the district court.

¶ 28 A different branch of the law of the case doctrine—often called the mandate rule—dictates that a prior decision of a district court becomes mandatory after an appeal and remand. The mandate rule, unlike the law of the case before a remand,

---

18. *Thurston v. Box Elder County*, 892 P.2d 1034, 1038 n. 2 (Utah 1995).

19. *Id.* at 1037.

20. *See id.* We note that we have sometimes used the terminology of res judicata, which we have defined to include the doctrines of both issue and claim preclusion, and the terminology of law of the case doctrine interchangeably. *See State v. Garner*, 2005 UT 6, ¶¶ 8–9, 106 P.3d 729. We have occasionally used the language of res judicata to describe the binding effect of an appellate court's prior decision on a later proceeding in the *same* case. *See, e.g., id.* ¶ 10 (holding that claim preclusion barred this court from reconsidering on a second appeal in the same case an issue that had been fully adjudicated in the first appeal); *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶¶ 8 n. 2, 56–63, 44 P.3d 663 (applying res judi-cata analysis to claims in "one continuous case"). Res judicata is more appropriately used to describe the binding effect of a decision in a prior case on a second case where the requirements we have delineated are met. *Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 34, 73 P.3d 325. Because the elements and effects of res judicata and law of the case doctrines may differ, they should be viewed as distinct doctrines. *See id.* ¶¶ 34–35.

21. *See* Utah R. Civ. P. 54(b) (providing that a district court may revise any order or decision at any time before a final judgment is made as to all claims and all parties).

22. *Thurston*, 892 P.2d at 1038 n. 2.

binds both the district court and the parties to honor the mandate of the appellate court.[23] The mandate is also binding on the appellate court should the case return on appeal after remand.[24]

2. The Law of the Case Doctrine Justified the District Court's Refusal to Reopen the Forfeiture Issue in this Case

¶ 29 The district court, invoking the law of the case doctrine, refused to reconsider the issue of forfeiture because it had already decided that issue by granting summary judgment in favor of IHC. We agree that the refusal was properly within the district court's discretion.

¶ 30 In denying D & K's motion, the district court enumerated D & K's numerous opportunities to argue substantial compliance as a defense to forfeiture. The parties first litigated the forfeiture issue prior to the appeal in *D & K I*. At that time, IHC moved for a declaratory judgment on the forfeiture issue, asserting that IHC was entitled to declaratory judgment on the claim of forfeiture and that *all* of D & K's affirmative defenses failed as a matter of law. D & K, therefore, had both the opportunity and the obligation to raise any defenses in opposition to IHC's claim of forfeiture or risk being barred from presenting them in this or any future proceeding by the law of the case doctrine.

¶ 31 The district court noted that D & K was given additional chances to argue substantial compliance as a defense to IHC's forfeiture claim. If, as it claims, D & K had properly preserved the defense of substantial compliance by pleading "unconscionability" in its Answer, D & K would have been free to brief the issue to this court on appeal, but it failed to do so. When this court reversed the district court's grant of summary judgment, IHC's forfeiture claim was again before the district court on IHC's Motion for Summary Judgment. Again D & K failed to raise substantial compliance on remand. The district court granted summary judgment in favor of IHC on its forfeiture claim.

¶ 32 While the district court may have had discretion to reconsider the issue of forfeiture, the law of the case doctrine justified its refusal to reopen the issue to consider D & K's newly developed substantial compliance argument. D & K argues that we should reverse the ruling of the district court because it erroneously held that it had no discretion to reconsider. Given discretion, D & K argues, the district court might have reopened the issue. But D & K's argument directly contradicts the record. The district court concluded that it had no discretion and, at the same time, indicated that it would decline to reopen the issue if it had discretion. The district court, having been briefed on D & K's substantial compliance argument, stated that it "d[id] not find that D & K ha[d] presented the Court with facts that would support a substantial compliance defense." The district court thus held that it would decline to hear the substantial compliance argument, or, in the alternative, that D & K could not prevail on the merits as a matter of law even if it considered the substantial compliance defense. Therefore, it is unnecessary for this court to decide whether the mandate rule bound the district court to follow its earlier decision. The law of the case doctrine clearly granted the district court discretion as to whether to reopen the previously decided forfeiture issue, and it properly declined to do so.

¶ 33 There are, however, exceptions to the law of the case doctrine, which, if applicable, require a district court to revisit an issue it has already decided. We now discuss these exceptions.

3. The Law of the Case Doctrine Does Not Apply in Certain Exceptional Circumstances

¶ 34 There are three exceptional circumstances in which the law of the case doctrine does not apply: "(1) when there has been an intervening change of controlling authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injus-

23. *Id.* at 1037–38.

24. *Gildea v. Guardian Title Co.*, 2001 UT 75, ¶ 9, 31 P.3d 543.

tice." [25] D & K argues that even if the law of the case doctrine applies, the district court should have reopened the issue of forfeiture under one of the three exceptional circumstances.

### 4. None of the Exceptions Applied to Excuse D & K from Failing to Argue Substantial Compliance

¶ 35 None of the exceptions required the district court to reopen the issue of forfeiture in this case. The first two exceptions did not apply because D & K did not point to any new facts or law which might have excused it from arguing substantial compliance when the forfeiture claim was decided. First, D & K has not pointed to any intervening change in law. We agree with the district court that "[t]he defense [D & K] wants to now argue is not new or novel, and indeed the main cases it relies upon in its present motion were all issued before [D & K] opposed [IHC's] initial Motion for Partial Judgment on the Pleadings." Nor has D & K briefed this court on any intervening change of law. Second, D & K has not pointed to any new evidence that it did not have an opportunity to present when the forfeiture claim was decided. In fact, at the 54(b) hearing on the forfeiture claim, counsel for D & K told the court that there were no undecided issues or facts left to be determined.

¶ 36 Finally, D & K is unable to show that the prior decision was clearly erroneous or would work a manifest injustice. In *Jensen v. Sawyers*, we held,

> manifest injustice [is] synonymous with plain error and ... the same analytical model applies to each. The plain error test has three parts: the demonstration of error; a qualitative showing that the error was plain, manifest, or obvious to the trial court; and evidence that the error affected the substantial rights of a party.[26]

Under this rule, D & K is required to show that the error was or should have been obvious to the district court at the time the first decision was made. While D & K has pointed to voluminous information in the record related to the costs it will incur if forced to relocate, it has failed to show that the district court should have ruled in its favor based on the law and evidence before it at the time of the decision. D & K's opposition to summary judgment on the issue of forfeiture did not raise the substantial compliance defense for the district court to consider. If D & K's own counsel, who had the responsibility to research and argue defenses on behalf of D & K, failed to recognize substantial compliance as a plausible defense, it is difficult to say that the error should have been "plain, manifest, or obvious" to the district court. Further, it is unlikely that the substantial compliance defense would have persuaded the district court even if it had been raised when the forfeiture claim was decided. The district court indicated as much when it denied D & K's Motion for Reconsideration:

> [A]s the parties have now briefed the matter of substantial compliance in the papers before the Court on [D & K's] motion for reconsideration, and having considered all the arguments, facts, and cases cited by the parties in those papers, the Court does not find that [D & K] has presented the Court with facts that would support a substantial compliance defense.

We agree and hold that none of the exceptions to the law of the case doctrine apply.

¶ 37 We affirm the district court's decision and conclude that it did not abuse its discretion in refusing to reopen the issue of forfeiture. Having affirmed that D & K has forfeited the Lease and that neither waiver nor substantial compliance provide a defense, we now turn to the issue of whether IHC may recover attorney fees according to the Lease.

### III. THE DISTRICT COURT ERRONEOUSLY AWARDED ATTORNEY FEES

¶ 38 Whether a party is entitled to an award of attorney fees is a legal conclu-

---

**25.** *Gildea*, 2001 UT 75, ¶ 9, 31 P.3d 543; *see also Gillmor v. Wright*, 850 P.2d 431, 439 (Utah 1993) (explaining the rationale behind the flexible application of the law of the case doctrine and the

circumstances in which courts are justified in reexamining their decisions).

**26.** 2005 UT 81, ¶ 61, 130 P.3d 325.

sion—in this case a matter of contract interpretation—which we review for correctness.[27] In our review, we will first discuss the language of the two provisions in the Lease contract that provide for an award of attorney fees. One provision allows recovery of attorney fees only in actions instituted during the term of the Lease; the other allows recovery of attorney fees without regard to whether the action is instituted during the term of the Lease. IHC cannot claim attorney fees under the second provision because it voluntarily dismissed its claim under that provision. Therefore, the issue becomes whether this action was instituted "during the term of this Lease" as intended by the contracting parties. Because we conclude that the action was not instituted during the term of the Lease, we reverse the district court's award of attorney fees in this case.

### A. The Lease Contains One Attorney Fees Provision for Actions Instituted During the Term of the Lease and One Attorney Fees Provision for Actions Without Regard to When They Were Instituted

¶ 39 "Generally, a party is entitled to attorney fees only as provided by contract or statute." [28] IHC bases its claim on the Lease contract. "Fees provided for by contract, moreover, are allowed only in strict accordance with the terms of the contract." [29] In general, provisions for attorney fees continue to be binding on the parties even though the term of the lease has ended. In *Cottonwood Mall Co. v. Sine*, we held that a "holdover tenant continues to be bound by the covenants which were binding upon him during the fixed term." [30] Although IHC terminated the Lease in this case when it sent the Notice of Default, D & K continues to occupy the leased premises subject to a final adjudication in this case and therefore continues to be bound by the covenants in the Lease.

¶ 40 In *Cottonwood Mall Co.*, the lease provided that attorney fees could be awarded "during the terms of this lease ... or to secure possession of the leased premises in the event this lease is terminated as herein provided ... or at the expiration of the term." [31] The lease in that case had ended because the term had expired. We held that because the provision for attorney fees "specifically cover[ed] actions by the lessor to secure possession of the premises at the expiration of the lessee's term ... includ[ing] the holdover period," the landlord could recover attorney fees.[32]

¶ 41 Similarly, the Lease in this case includes a provision, section 17.2(c), that permits either party to recover attorney fees without regard to whether the lawsuit was instituted during the term of the Lease. Section 17.2(c) lists attorney fees among the damages recoverable in a lawsuit for breach of contract. Such a lawsuit may often be instituted after the term of the Lease has, possibly as a result of the breach, ended. In contrast, section 23 of the Lease contemplates an award of attorney fees for actions instituted during the term of the Lease. It provides for attorney fees "in the event that at any time *during the term of this Lease* either the Landlord or the Tenant institutes any action or proceeding against the other relating to the provisions of this Lease or any default hereunder." (Emphasis added.) While this provision may be invoked for "any action or proceeding" related to the Lease, it limits recovery of attorney fees to actions instituted during the term of the Lease.

### B. IHC Voluntarily Dismissed Its Claim to Attorney Fees Under Section 17.2(c)

¶ 42 IHC has waived any claim to attorney fees under section 17.2(c). Prior to the litigation, IHC's Notice of Default referenced section 17.2(c). But, after prevailing on the merits in the litigation, IHC filed a

27. *Paul deGroot Bldg. Servs., L.L.C. v. Gallacher*, 2005 UT 20, ¶ 18, 112 P.3d 490.

28. *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269 (Utah 1992).

29. *Foote v. Clark*, 962 P.2d 52, 54 (Utah 1998).

30. 767 P.2d 499, 503 (Utah 1988).

31. *Id.*

32. *Id.*

Combined Motion to Dismiss Remaining Claims of Damages and to Award Attorney Fees and Costs, in which it relied exclusively on section 23 for its attorney fees claim. The district court subsequently ruled that

> In the unlikely event that [IHC] is claiming fees under section 17.2 of the Lease, that section is unavailing. Section 17.2 provides for attorney's fees as an element of 'damages,' and any damage claim arising from the eviction proceeding has been expressly waived, and my Order of January 23, 2006, makes that waiver law of the case.

IHC did not appeal this ruling. Therefore, IHC is limited to recovering attorney fees for actions instituted during the term of the lease.

## C. The Action Was Not Instituted During the Term of the Lease in this Case

¶ 43 Whether IHC is entitled to attorney fees under section 23 turns on whether this action was instituted during the term of the Lease. D & K argues that, under IHC's theory of the case, IHC terminated the Lease when it sent the Notice of Default more than one year before it filed its Complaint. The district court, on the other hand, held that "[u]ntil this court ... determined that [IHC's] ejectment action at common law was successful, the Lease was not terminated." We agree with D & K that the "term of this Lease" ended when IHC sent the Notice of Default, and therefore this action was not filed during the term of the Lease. Accordingly, we reverse the district court's award of attorney fees to IHC.

 ¶ 44 We interpret the contractual term "during the term of this Lease" in accordance with our well-developed rules of contract interpretation. "The underlying purpose in construing or interpreting contractual provisions is to determine the intentions of the parties." [33] Whenever possible, "the intent of the parties is to be determined from the writing itself, with each provision being considered in relation to all others." [34]

¶ 45 In this case, the two Lease provisions related to attorney fees must be read in relation to each other. Section 23 provides for attorney fees only for actions instituted during the term of the Lease, while section 17.2(c) creates an additional entitlement to attorney fees without regard to whether the action was instituted during the term of the Lease. Section 17.2(c), entitled "Termination of this Lease by written notice to Tenant," grants attorney fees in the event that the landlord terminates the Lease by written notice. If the parties intended that such a notice of termination would not end the term of the Lease, the extra provision for attorney fees in section 17.2(c) would have been unnecessary. We do not believe the parties intended to include such a specific entitlement as mere surplusage. Rather, the inclusion of section 17.2(c), which specifically contemplates termination of the Lease by written notice, evinces the parties' intent to provide for attorney fees incurred in recovering the premises where such fees could not have been awarded under section 23 because the term of the Lease had ended following a breach of contract. Therefore, the term of the Lease ended in this case when the landlord, IHC, sent a written notice of termination.

¶ 46 IHC's written Notice of Default itself purported to terminate the Lease. The Notice of Default specifically invoked the remedies in section 17.2(c), including its right to recover attorney fees for a lawsuit instituted after the term of the Lease had ended. The district court ruled that IHC expressly waived this right, and IHC did not appeal this ruling. Therefore, because IHC waived its right to recover in actions instituted after the term of the Lease, and this action was instituted after the term of the Lease, IHC may not recover attorney fees in this case.

¶ 47 We therefore reverse the order of the district court awarding attorney fees to IHC. Because we conclude that IHC is not entitled to attorney fees under the Lease, it is unnecessary to decide whether the amount of the attorney fee award was reasonable.

**33.** *Peterson v. Coca–Cola USA*, 2002 UT 42, ¶ 9, 48 P.3d 941.

**34.** *Willard Pease Oil & Gas Co. v. Pioneer Oil & Gas Co.*, 899 P.2d 766, 770 (Utah 1995).

## CONCLUSION

¶ 48 We conclude that the district court appropriately granted summary judgment in favor of IHC on the issue of waiver because, under the totality of the circumstances, no reasonable fact finder could conclude that IHC intended to waive its right to terminate the Lease. We also affirm the district court's refusal to reopen the forfeiture issue to consider D & K's untimely-raised defense of substantial compliance. The law of the case doctrine granted the district court discretion to refuse to reopen the issue of forfeiture, and D & K did not demonstrate that any exceptional circumstance excused its failure to timely raise substantial compliance. But we reverse the district court's award of attorney fees because IHC waived its right to recover attorney fees under section 17.2(c) and cannot recover under section 23 as IHC terminated the Lease by sending the Notice of Default.

¶ 49 Justice WILKINS, Justice PARRISH, Justice NEHRING, and Judge LYNN W. DAVIS concur in Associate Chief Justice DURRANT'S opinion.

¶ 50 Having disqualified herself, Chief Justice DURHAM does not participate herein; District Judge LYNN W. DAVIS sat.