**2014 UT App 234**

## THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF C.M., A PERSON UNDER
EIGHTEEN YEARS OF AGE.

C.M.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Memorandum Decision
No. 20121023-CA
Filed October 2, 2014

Fifth District Juvenile Court, Cedar City Department
The Honorable Thomas M. Higbee
No. 1014871

Thomas M. Burton, Attorney for Appellant

Sean D. Reyes, Andrew F. Peterson, and John J.
Nielsen, Attorneys for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Memorandum
Decision, in which JUDGE GREGORY K. ORME and SENIOR JUDGE
PAMELA T. GREENWOOD concurred.[1]

VOROS, Judge:

¶1     In this delinquency case, C.M., a minor at the time of the
delinquency, requests an order of this court "striking or vacating

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by
special assignment as authorized by law. *See generally* Utah Code
Jud. Admin. R. 11-201(6).

the April 14, 2009 conviction."[2] C.M. contends that the juvenile court proceeded to adjudicate her without first obtaining personal jurisdiction over her and that her later stipulation to the juvenile court's jurisdiction was unauthorized and thus failed to confer jurisdiction on the court.

1

¶2    At the outset, the State asks us to censure C.M.'s current counsel on the ground that his appellate brief, "like his pleadings below, is littered with comments that disparage the integrity and motives of the juvenile court, the prosecutor, and prior counsel."

¶3    The State relies on *Peters v. Pine Meadow Ranch Home Association,* 2007 UT 2, 151 P.3d 962. There, the petitioner's counsel filed briefs "replete with attacks on the integrity of the court of appeals panel that decided the cases below. Those attacks [were] unfounded, scandalous, irrelevant . . . and disrespectful of the judiciary." *Id.* ¶ 23. Those briefs identified claimed errors in the court of appeals decision under review. *Id.* ¶ 10. But they went further, alleging that those errors "were intentional and the result of improper motives." *Id.* Yet in support of those accusations, the petitioner's counsel offered "nothing beyond the fact that the errors were made." *Id.* ¶ 10.

¶4    The supreme court concluded that such accusations "personally attack[ed] the integrity of the court of appeals panel, suggesting serious intentional misconduct." *Id.* ¶ 15. It further determined that they violated rule 8.2 of the Utah Rules of Professional Conduct[3] and Standards 1 and 3 of the Utah Standards

---

2. The April 14, 2009 order of the juvenile court was in fact not a "conviction" but an adjudication that C.M.'s acts had brought her within the jurisdiction of the juvenile court.

3. Rule 8.2(a) of the Utah Rules of Professional Conduct states, "A lawyer shall not make a public statement that the lawyer knows to

(continued...)

of Professionalism and Civility.[4] *Id.* ¶ 11. Accordingly, pursuant to rule 24(k) of the Utah Rules of Appellate Procedure,[5] the court struck the offending briefs, assessed attorney fees against the petitioner's counsel, and declined to consider the issues on review. *Id.* ¶ 23.

¶5 Here, C.M.'s brief suffers from similar flaws. For example, it refers to a minute entry in the juvenile court as "a complete fabrication." It also repeats on appeal the charge that the State's arguments "revealed a collaboration between prosecution and defense counsel to establish personal jurisdiction over C.M.," an accusation for which present counsel was admonished by the juvenile court. That court found that counsel had "produced no evidence of any 'collaboration' because none exists."

¶6 Based on the foregoing, the State asks this court to admonish counsel and warn him against employing such tactics in the future.

---

3. (...continued)
be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or a candidate for election or appointment to judicial office."

4. Standard 1 of the Utah Standards of Professionalism and Civility states in part that "lawyers shall treat all other counsel, parties, judges, witnesses, and other participants in all proceedings in a courteous and dignified manner." Standard 3 of the Utah Standards of Professionalism and Civility states in part, "Lawyers shall not, without an adequate factual basis, attribute to other counsel or the court improper motives, purpose, or conduct."

5. Rule 24(k) of the Utah Rules of Appellate Procedure states, "All briefs under this rule must be concise, presented with accuracy, logically arranged with proper headings and free from burdensome, irrelevant, immaterial or scandalous matters. Briefs which are not in compliance may be disregarded or stricken, on motion or sua sponte by the court, and the court may assess attorney fees against the offending lawyer."

While noting that we recently struck a brief filed by C.M.'s counsel in an unrelated case for "irrelevant and scandalous" content, *see State v. Wolf*, 2014 UT App 18, ¶ 12 n.4, 319 P.3d 757, the State does not ask that we strike C.M.'s brief here. Counsel for C.M. did not file a reply brief.

¶7     We agree with the State that, like the petitioner's briefs in *Peters*, C.M's brief here suggests that the lower court's alleged errors were intentional and the result of improper motives. *Peters*, 2007 UT 2, ¶ 10. As in *Peters*, it accuses the lower court of fabricating a factual finding. *Id.* ¶ 12. And as in *Peters*, C.M.'s counsel supports these accusations with "nothing beyond the fact that the errors were made." *Id.* ¶ 10.

¶8     Nevertheless, these offenses are neither as excessive nor as pervasive as the misconduct sanctioned in *Peters*. Furthermore, counsel offered a partial apology in oral argument before this court. Accordingly, we do not strike the brief, assess attorney fees against counsel, or decline to entertain the appeal. However, we caution counsel against employing such language in the future. *See Superior Receivable Servs. v. Pett*, 2008 UT App 225, ¶ 12, 191 P.3d 31. Assigning Machiavellian motives to errors of judges and lawyers is improper and usually inaccurate. And aside from implicating the Rules of Professional Conduct and the Standards of Professionalism and Civility, inflammatory language and personal accusations undermine the position they ostensibly support. Knowledgeable readers understand that those with persuasive arguments based on law and logic rarely resort to ad hominem attacks.

2

¶9     C.M.'s principal contention on appeal is that the juvenile court lacked personal and subject matter jurisdiction over her. The parties agree that the juvenile court lacked personal jurisdiction over C.M. at the time it originally adjudicated her in absentia. However, defense counsel later filed a stipulated motion on her behalf seeking to reduce the levels of the offenses. The juvenile

court granted the motion and reduced the levels of the offenses for which she was adjudicated.

¶10    Later, through present counsel, C.M. filed a motion to vacate the amended adjudication on the ground that the court at all times lacked personal and subject matter jurisdiction over C.M. The State responded that C.M. waived any defect in personal jurisdiction by appearing and renegotiating the adjudication. At the motion hearing, C.M.'s current counsel sought leave to further brief the issue of waiver. The juvenile court allowed further briefing. Two months later, the juvenile court's ruling concluded that it had both subject matter and personal jurisdiction over C.M. It further noted that while the State's brief addressed waiver, "counsel for [C.M.] never addressed the issue of waiver." The court ruled that C.M. had waived her claim that the court lacked personal jurisdiction. In addition, the court responded to C.M.'s claim that the attorney who negotiated the reduction in charges "never represented her, but rather represented her mother." The court found that "[t]he only evidence on that point"—specifically, the mother's affidavit—"is contrary to this assertion." This order was dated August 24, 2012. C.M. did not appeal from it.

¶11    But on September 25, 2012, again represented by present counsel, C.M. filed a second motion seeking to vacate the juvenile court's adjudication on the ground that the court lacked subject matter and personal jurisdiction. No memorandum of law accompanied the motion. The motion was "based upon the declaration of [C.M.] and upon the pleadings and evidence already before the court." The declaration of C.M. alleged that, although aware that her mother was attempting to get her charges reduced, she had not retained counsel or authorized her mother to retain counsel on her behalf. The declaration alleged no facts unknown to C.M. at the time of the first motion.

¶12    The State's response noted that the juvenile court had "already rejected" C.M.'s claim that she knew nothing about the attorney who obtained reduced charges on her behalf and made other arguments. The State also attached a document apparently signed by C.M. in 2010 authorizing her mother to receive

information regarding her case. The juvenile court denied the second motion without comment on October 29, 2012. C.M. filed a notice of appeal on November 28, 2012.

¶13 The State contends that we lack jurisdiction over this appeal because C.M. did not file a timely notice of appeal. "An appeal may be taken from a district or juvenile court to the appellate court with jurisdiction over the appeal from all final orders and judgments . . . ." Utah R. App. P. 3(a). An appeal of right from a juvenile court order not related to abuse, neglect, dependency, termination, or adoption must be taken "within 30 days from the entry of the order, decree, or judgment appealed from." Utah Code Ann. § 78A-6-1109(2), (7) (LexisNexis 2012). "Failure to file a timely notice of appeal deprives this court of jurisdiction over the appeal." *Reisbeck v. HCA Health Servs. of Utah, Inc.*, 2000 UT 48, ¶ 5, 2 P.3d 447.

¶14 The juvenile court adjudicated C.M. delinquent in absentia on April 14, 2009. C.M. understandably did not appeal that judgment. When she later learned of it, she filed, through present counsel, a "Motion to Strike" the adjudication. The State asserts, and we agree, that this motion was in substance a rule 60(b)(4) motion for relief from a void judgment. *See* Utah R. Civ. P. 60(b)(4); *see also* Utah R. Juv. P. 48(a) (providing that rule 60 applies to post-judgment motions in juvenile court). The juvenile court denied this motion on August 24, 2012. "[A]n order denying relief under rule 60(b) is a final appealable order." *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 970 (Utah Ct. App. 1989) (citing *Mascaro v. Davis*, 741 P.2d 938, 946 (Utah 1987)). Yet C.M. did not file a notice of appeal within thirty days after entry of this order. Accordingly, we lack jurisdiction to review the August 24, 2012 order.

¶15 However, the juvenile court entered a second order. On September 25, 2012, C.M. filed a second motion seeking the same relief as her first motion: a ruling that the court lacked subject matter and personal jurisdiction over her. The juvenile court denied this order on October 29, 2012. C.M.'s brief does not separately challenge this order. But in any event, we agree with the State that her "second motion is clearly barred by 'law of the case.'" *Id.* at 969.

¶16    Under the law-of-the-case doctrine, a court may in its discretion revisit a ruling but may also "decline to reopen a matter it has already decided." *IHC Health Servs., Inc. v. D&K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588. A court is required to reopen a prior decision only "(1) when there has been an intervening change of controlling authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *Id.* ¶ 34 (citation and internal quotation marks omitted). C.M.'s second motion did not assert any of these grounds or, for that matter, any grounds not asserted in the motion already rejected by the juvenile court. She did attach a declaration, but it alleged only facts that were available at the time of the original motion "and with due diligence could have been included in the original motion." *See Amica Mut.*, 768 P.2d at 969. Furthermore, C.M. fails to address the relevant law on appeal. Thus, C.M. made no attempt below and makes no attempt on appeal to explain why the juvenile court was legally required to revisit its August 24, 2012 order. Accordingly, to the extent C.M. seeks to separately appeal the juvenile court's order of October 29, 2012, we affirm the judgment of the juvenile court.

———